UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Hon. Jamel K. Semper |
| | : | |
| v. | : | |
| | : | |
| JAYSON SETERA | : | Crim. No. 25-802 |

---

**MEMORANDUM OF LAW OF THE UNITED STATES IN SUPPORT OF MOTIONS *IN LIMINE***

---

TODD BLANCHE
U.S. Deputy Attorney General

PHILIP LAMPARELLO
Senior Counsel

970 Broad Street, Suite 700
Newark, New Jersey 07102
(973) 645-2700

ROBERT L. TOLL
MATTHEW SPECHT
Assistant U.S. Attorneys

## PRELIMINARY STATEMENT

Defendant Jason Setera is charged in a two-count indictment with possessing and transporting child pornography (child sexual abuse material or "CSAM"). The charges arise from his entry into the United States at Newark Liberty International Airport in January 2024, at which time he possessed an iPhone containing images and videos of CSAM.

The United States will prove at trial that the Defendant possessed and transported CSAM at and through Newark Airport in January 2024. The United States expects the evidence presented at trial will include CSAM extracted from the Defendant's iPhone and depictions of CSAM contained in the Defendant's iCloud account (which was later obtained pursuant to a search warrant). The United States also expects to introduce other electronic evidence, including messages concerning child sexual abuse sent to and from the Defendant.

The United States respectfully submits this brief in support of its motions *in limine*.

## FACTUAL BACKGROUND

The facts underlying this case are serious but straightforward. On January 22, 2024, the Defendant landed at Newark Airport aboard an inbound international flight. Customs and Border Protection ("CBP") officers conducted a lawful border search of the iPhone in his possession. The Defendant's iPhone contained more than 100 files depicting CSAM, messages in which the Defendant offered another individual ("Individual-1") money for a "good sexy video call" with Individual-1 children she had access to, and messages in which the Defendant received CSAM. The Defendant was interviewed and admitted to receiving images from Individual-1 of children in the shower, and asked what would happen if illegal pornography was found on his iPhone.

Financial records confirm the Defendant sent money to Individual-1. A search warrant on

the Defendant's iCloud account also revealed CSAM.

The Defendant was charged by complaint with possessing and transporting CSAM in violation of 18 U.S.C. §§ 2252A(a)(5)(B), 2252A(b)(2), and (2); and 18 U.S.C. §§ 2252A(a)(1) and (2), *see* ECF No. 1, and later indicted on those same charges, ECF No. 15.

## ARGUMENT

### I. THE UNITED STATES SHOULD BE PERMITTED TO ADMIT CERTAIN EVIDENCE OF THE DEFENDANT'S PRIOR BAD ACTS

The United States seeks a ruling that evidence found on the Defendant's iPhone and iCloud account showing that he sought out and paid for CSAM is admissible. First, that evidence is intrinsic to the offenses charged. Second, even if it was not, it is nevertheless admissible under Federal Rule of Evidence 414 as evidence of "other child molestation" and under Rule 404(b)[1] for non-propensity purposes, including to show opportunity, motive, intent, identity, knowledge, absence of mistake, and lack of accident regarding the crimes charged, as well as to show the Defendant's ownership and use of the iPhone and iCloud account.

#### A. The Legal Standards

##### 1. Intrinsic Evidence

Evidence of uncharged acts is intrinsic where: (1) it "directly proves the charged offense;" or (2) if it relates to "uncharged acts performed contemporaneously with," and which "facilitate[d] the commission of[,] the charged crime." *United States v. Green*, 617 F.3d 233, 248-49 (3d Cir. 2010) (cleaned up). If other acts evidence is intrinsic to the crimes charged, the requirements of Rule 404(b) do not apply. *See* Fed. R. Evid. 404(b), Advisory Committee Notes

[1] If this evidence is not intrinsic, the United States informed the Defendant of its intent to offer the others acts evidence at trial on February 9, 2026.

to 1991 Amendment (Rule 404(b) "does not extend to evidence of acts that are 'intrinsic' to the charged offense"); *Huddleston v. United States*, 485 U.S. 681, 685 (1988) (Rule 404(b) applies only to "extrinsic acts"); *United States v. Gibbs*, 190 F.3d 188, 217-18 (3d Cir. 1999) (Rule 404(b) "does not apply to evidence of uncharged offenses committed by a defendant when those acts are intrinsic to the proof of the charged offense"). This is because "[w]hen the evidence of another crime is necessary to establish an element of the offense being tried, there is no other crime." *United States v. Blyden*, 964 F.2d 1375, 1378 (3d Cir. 1992); *Green*, 617 F.3d at 245 ("courts today exempt intrinsic evidence from application of Rule 404(b) on the theory that there is no 'other' wrongful conduct at issue"). Rather, the evidence of the other act is part and parcel of the crime alleged. *See United States v. Sriyuth*, 98 F.3d 739, 747 (3d Cir. 1996).

**2. Rule 414(a)**

In 1994, as part of the Violent Crime Control and Law Enforcement Act, Congress enacted Rule 414 of the Federal Rules of Evidence. It provides:

> In a criminal case in which a defendant is accused of child molestation, the court may admit evidence that the defendant committed any other child molestation. The evidence may be considered on any matter to which it is relevant.

Fed. R. Evid. 414(a). Thus, evidence is admissible under Rule 414 if a defendant is accused of an act of "child molestation" and the evidence offered is evidence that he committed a prior or different act of child molestation. Under Rule 414, offense of "child molestation" includes any crime under state or federal law that involved conduct prohibited by Chapter 109A of the United States Code and committed with a child; any conduct prescribed by Chapter 110 of Title 18 of the United States Code; and related acts. 18 U.S.C. § 2252A, which prohibits soliciting, receiving, or distributing CSAM, falls within Chapter 110 of Title 18 of the United States Code, and thus Rule 414 applies to such offenses.

Rule 414 evidence must satisfy three threshold elements: (1) the defendant must be accused of an offense of child molestation; (2) the proffered prior act evidence must pertain to the defendant's commission of another child molestation; and (3) the evidence must be relevant. *See* Fed. R. Evid. 401, 414; *United States v. Maurizio*, Crim. No. 3:14-23, 2015 WL 5177821 (W.D. Pa. Sept. 4, 2015), *aff'd*, 701 F. App'x 129 (3d Cir. 2017); *see also United States v. Merz*, 2009 WL 1183771, at *8 (E.D. Pa. May 4, 2009), *aff'd*, 396 F. App'x 838 (3d Cir. 2010) (upholding admission of prior child molestation in CSAM case under Rule 414).

Rule 414, like Rule and Rule 415, "overrides the ban on propensity inferences in a specific situation." *United States v. Jones*, 748 F.3d 64, 69 (1st Cir. 2014); *see also Maurizio*, 2015 WL 5177821, at *4. Stated differently, in "child molestation cases, evidence that the defendant committed a prior similar offense may be considered for its bearing on any matter to which it is relevant, including the defendant's propensity to commit such offenses." *United States v. Hollow Horn*, 523 F.3d 882, 887 (8th Cir. 2008) (cleaned up).

Evidence admitted pursuant to Rule 414 "does not need to be similar in every respect to the charged offense"; it "only needs to be probative as to some element of the charged offense." *United States v. Moore*, 425 F. App'x 347, 352 (5th Cir. 2011) (citing *United States v. Dillon*, 532 F.3d 379, 389 (5th Cir. 2008)); *United States v. Goff*, 155 F. App'x 773, 776 (5th Cir. 2005). Congress intended Rule 414 evidence to be presumptively and liberally admitted. *See, e.g*, 140 Cong. Rec. S12990-01, September 20, 1994. Rule 414 evidence is admissible "if a reasonable jury could find by a preponderance of the evidence that the past act" by the defendant was an offense of child molestation as defined in Rule 414(d). *See Johnson v. Elk Late Sch. Dist.,* 283 F.3d 138, 155-56 (3d Cir. 2002) (discussing reliability threshold of evidence of prior uncharged

act in Rule 413 context). And, as with Rule 404(b) evidence, no time limitation is imposed on prior acts of molestation under Rule 414. *See United States v. Meacham*, 115 F.3d 1488, 1492 (10th Cir. 1997) (citing *United States v. Hadley*, 918 F.2d 848, 850-51 (9th Cir. 1990)).

Rule 403 remains applicable to the admission of prior child molestation offenses, and evidence that meets the criteria of Rule 414 may still be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice." *See* Fed. R. Evid. 403; *see also United States v. LeMay*, 260 F.3d 1018, 1026 (9th Cir. 2001) ("[T]here is nothing fundamentally unfair about the allowance of propensity evidence under Rule 414 …[a]s long as the protections of Rule 403 remain in place . . . ."). But Rule 414 limits the practical effect of Rule 403. Rule 403 does not "require the government to sanitize its case, to deflate its witnesses' testimony, or to tell its story in a monotone." *United States v. Cross*, 308 F.3d 308, 320-21, 323 (3d Cir. 2002) ("[w]hen evidence is highly probative, even a large risk of unfair prejudice may be tolerable.") (cleaned up). And "where the propensity inference that can be drawn from the past act evidence is greatest, Congress surely intended for the probative value of the evidence to outweigh its prejudicial effect, and conversely, did not want Rule 403 facts such as undue delay, waste of time, confusion of the issues, etc., to justify exclusion." *Johnson*, 283 F.3d at 156. Rule 414 encourages admission of such evidence where sexual interest in children is central to the requisite state of mind. *See Meacham*, 115 F.3d at 1494-95.

**3. Rule 404(b)**

"Evidence of any other crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). However, "[t]his evidence may be admissible for another

purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2).

Rule 404(b) applies to evidence of wrongful "extrinsic" acts, and the proponent bears the burden of admissibility. *United States v. Caldwell*, 760 F.3d 267, 276 (3d Cir. 2014). "To be admissible under Rule 404(b), evidence of uncharged crimes or bad acts must: (1) have a proper purpose under Rule 404(b); (2) it must be relevant under Rule 402; (3) its probative value must outweigh its prejudicial effect under Rule 403; and (4) if the defendant requests it, the court must instruct the jury to consider the evidence only for the limited purpose for which it is admitted." *United States v. Bailey*, 840 F.3d 99, 128 (3d Cir. 2016).

### B. The Evidence is Admissible

#### 1. Evidence that the Defendant Sought Out and Paid For CSAM is Admissible

##### A. The Evidence

The United States intends to introduce evidence from the Defendant's iPhone and iCloud showing that he sought out and paid for CSAM.

For example, the United States intends to introduce evidence that in September 2022, the Defendant sent the following messages to Individual-1: "I want a good sexy video call with your girls," "When will you call me so I can see them naked," "Tomorrow I want to see your girls pussy," "How many hours until you call with your girls," "I love you and your girls, I want to see naked." Shortly after sending these messages, the Individual-1 sent the Defendant CSAM. The United States also intends to introduce evidence that the Defendant searched for CSAM.

This evidence is admissible for at least three separate and independent reasons, namely that (1) it provides direct proof of an element of each crime charged and is, therefore, intrinsic;

(2) it reflects acts of "other child molestation" and is admissible under Rule 414; and (3) it is admissible pursuant to Rule 404(b) for non-propensity purposes, including to show the Defendant's ownership and use of the iPhone and iCloud account, his interest in CSAM, his motive and opportunity to access CSAM, his knowing awareness of the CSAM he possessed and received, absence of mistake, and lack of accident regarding the crimes charged.

**B. This Evidence is Intrinsic**

Evidence that the Defendant sought and paid for child pornography is intrinsic to the crimes charged: possession and transportation of CSAM.

Each of the CSAM offenses charged in the Indictment requires the United States to prove that the Defendant committed the proscribed acts "knowingly." *See* 18 U.S.C. § 2252A(a)(5)(B) ("knowingly possesses"); 18 U.S.C. § 2252A(a)(1) ("knowingly . . . . transported"). Factors relevant to whether possession of CSAM was accomplished knowingly are:

> (1) whether images were found on the defendant's computer; (2) the number of images of child pornography that were found . . .; (3) whether the content of the images was evident from their file names . . . [;] (4) defendant's knowledge of and ability to access the storage area for the images . . . [; and (5) ] the number of occasions that the images were copied [or downloaded].

*United States v. Franz*, 772 F.3d 134, 155 (3d Cir. 2014).

Evidence that the Defendant searched for and visited CSAM provides circumstantial evidence of the knowing possession of CSAM. *See, e.g.*, *United States v. Croghan*, 973 F.3d 809, 830 (8th Cir. 2020) (sustaining receipt of CSAM conviction based on testimony that the defendant had visited and accessed CSAM website); *United States v. Ramos*, 685 F.3d 120, 131 (2d Cir. 2012) (evidence sufficient for knowing receipt and possession of CSAM because, among other things, "there was ample evidence that [defendant] intentionally searched for images of child pornography, found them, and knowingly accepted them onto his computer,

albeit temporarily"); *United States v. Pruitt*, 638 F.3d 763, 766 (11th Cir. 2011); *cf. United States v. Miller*, 527 F.3d 54, 67–69 (3d Cir. 2008) (finding evidence that images had been downloaded or that defendant visited CSAM websites sufficient to establish receipt of CSAM despite lack of direct, forensic evidence).

Evidence that the Defendant searched for, accessed, and visited apparent CSAM websites, including before the date charged in the Indictment, is relevant to show that the Defendant knowingly possessed and transported CSAM found on his iPhone and iCloud. *See, e.g.*, *Miller*, 527 F.3d at 63. The intrinsic nature of this evidence is further buttressed by the fact that the Defendant may contest that he was responsible for the contents of his iPhone or iCloud. Thus, evidence of the activity on the Defendant's iPhone and iCloud is highly relevant to establishing his ownership and use of those devices, which may be a contested issue at trial.

In sum, because the evidence from the Defendant's iPhone and iCloud "directly proves" an element of each of the charged offenses, it is intrinsic, highly relevant, and admissible. *See Green*, 617 F.3d at 248 (evidence is intrinsic if it "directly proves" the charged offense).

### C. Even if the Evidence is Not Admissible as Direct Evidence, it is Admissible under Rule 414

Even if the evidence is not admissible as direct evidence, it is admissible under Rule 414(a). Rule 414 evidence must satisfy three threshold elements: (1) the defendant must be accused of an offense of child molestation; (2) the prior act evidence must pertain to the defendant's commission of another child molestation; and (3) the evidence must be relevant. *See* Fed. R. Evid. 401, 414. All of these requirements are satisfied.

First, an "offense of child molestation" includes "any conduct prohibited by 18 U.S.C. chapter 110," which in turn, includes violations of 2252A(a)(5)(B), and 2252A(a)(1). Fed. R.

Evid. 414(d)(2). Rule 414 applies here because the Defendant is charged in Counts One and Two of the Indictment with violating 18 U.S.C. § 2252A(a)(5)(B).

Second, Rule 414's definition of "child molestation" includes prior or different conduct involving the possession of CSAM. Fed. R. Evid. 414. Here, the United States seeks to introduce evidence of the Defendant actively seeking out, paying for, and possessing CSAM. For example, in *United States v. Heatherly*, the Third Circuit found Rule 414 applicable to the admission of uncharged CSAM found on the defendant's devices, which was relevant to show the defendant's interest in CSAM. 985 F.3d 254, 268-69 (3d Cir. 2021); *see also United States v. Baer*, 843 F. App'x 472, 479 (3d Cir. 2021) (unpublished) (uncharged CSAM properly admitted under Rule 414). The same logic applies here.

Third, evidence that the Defendant searched for and obtained CSAM is highly relevant to establishing an element of the CSAM offenses charged—namely that he knowingly possessed and transported the CSAM.

Moreover, the proffered evidence shows a pattern of seeking out CSAM. The evidence links the Defendant to the CSAM found on his iPhone and iCloud account, and rebuts any defense that he was not the person who committed the offenses.

In addition to being relevant, evidence must also pass the balancing test of Rule 403 before it can be admitted at trial. *Johnson*, 283 F.3d at 155-56. This balancing test allows exclusion if its probative value is substantially outweighed by the danger of unfair prejudice. *See* Fed. R. Evid. 403. However, Rule 403 operates somewhat differently in the context of Rule 414 due to the admissibility of propensity evidence.

Under Rule 404(b), the tendency of uncharged act evidence to establish a propensity of

the defendant to commit the charged crime is deemed prejudicial and weighs *against* admission, because Rule 404(b) does not allow evidence to be admitted for that purpose. By contrast, *and because showing propensity is a legitimate theory of relevance under Rule 414*, the tendency of evidence to show dispositions of the defendant that could lead to the commission of the charged crimes weighs *in favor of* admission. In other words, when applying the Rule 403 balancing test in the context of Rule 414, propensity evidence falls on the "probative value" side of the scale, rather than on the "unfair prejudice" side. *See United States v. Summage*, 575 F.3d 864 (8th Cir. 2009) ("Because propensity evidence is admissible under Rule 414, the fact that evidence of prior acts suggests a propensity to molest children is not *unfair* prejudice.") (cleaned up). Thus, "[w]here the Government can show a past offense with specificity and the act is sufficiently similar to the [charged act], there is a presumption in favor of admissibility of Rule 414 evidence." *Maurizio*, 2015 WL 5177821 at *4 (citing *Johnson*, 283 F.3d at 156).

Here, the prior bad act evidence is sufficiently similar to the charged conduct, highly probative, and should be admitted. It tends to show that the Defendant pursued CSAM, and these past acts make it more likely that he committed the offenses charged here. And the United States does not intend to introduce the prior bad act evidence of this evidence activity through live testimony of victims, but rather, through other witness testimony and exhibits, which include data from his iPhone and iCloud account. This evidence is no more severe than the CSAM depictions charged in the Indictment and is thus not overly prejudicial in the Rule 414 context.

### D. The Evidence is Admissible Under Rule 404(b) For Non-Propensity Purposes

Alternatively, this evidence is admissible under Rule 404(b) for proper non-propensity purposes, such as motive, opportunity, intent, knowledge, identity, absence of mistake, lack of

accident, and proving the Defendant's ownership of his iPhone and iCloud account.

As noted above, to be admissible under Rule 404(b), evidence of uncharged crimes or bad acts must: (1) have a proper purpose under Rule 404(b); (2) be relevant under Rule 402; (3) have a probative value that outweighs its prejudicial effect under Rule 403; and (4) if the defendant requests it, the court must instruct the jury to consider the evidence only for the limited purpose for which it is admitted. *Bailey*, 840 F.3d at 128.

Courts routinely find uncharged conduct related to CSAM admissible under Rule 404(b) for non-propensity purposes. For example, in *United States v. Galletta*, the Third Circuit found in a CSAM case that a trial court properly admitted evidence of uncharged prior bad act evidence under Rule 404(b), including photographs of young girls, surreptitious videos taken of children, and email conversations expressing an interest in young girls. 662 F. App'x 190, 194 (3d Cir. 2016) (non-precedential). The court found the evidence was offered for a proper non-propensity purpose, "namely to demonstrate the [defendant's] intent to have sexual activity with a minor," which was rendered more probative by the anticipated defense that "he was not interested in sexual activity with minors." *Id.* 194-95. The risk of unfair prejudice was limited, the court reasoned, by the limiting instruction and the fact that the prior bad act evidence was similar in character to the admitted evidence. *Id.*

Similarly, in *United States v. Blevins*, the Third Circuit affirmed admission under Rule 404(b) of uncharged sexually explicit videos found on a defendant's computer which depicted his neighbors in various stages of undress. 614 F. App'x 609 (3d Cir. 2015) (non-precedential). The court reasoned that the videos, though prejudicial, were highly relevant to a proper non-propensity purpose—to show the defendant's knowledge of the CSAM on his computer and

control over his electronic devices—and proper measures were taken to limit unfair prejudice, including through a limiting instruction. *Id.* at 612; *see also United States v. Cox*, 2011 WL 4906672, at *1 (D.N.J. Oct. 14, 2011) (uncharged CSAM and email communications admissible to show knowledge of the content of the videos that formed the basis of the distribution counts).

Here, the United States will be required to prove that the Defendant acted knowingly to convict him of the counts in the Indictment. It will further have to show that the Defendant had an awareness of the sexually explicit nature of the material he possessed and transported.

Evidence that the Defendant sought out and paid for CSAM makes it more likely that he was aware that the CSAM on his iPhone and iCloud account were CSAM, and therefore, that he had the requisite intent to commit the possession and transportation offenses charged in the Indictment. Intent and knowledge are proper non-propensity purposes under Rule 404(b).

The evidence is also relevant to rebut a potential defense—namely, that someone else accessed his devices to download CSAM. That the Defendant was looking at apparent CSAM websites at various times on his devices makes it far less likely that someone else was responsible for the CSAM charged in the Indictment. Thus, it is also plainly relevant for non-propensity purposes to establish motive, opportunity, ownership and control of the iPhone and iCloud, absence of mistake, and lack of accident. *See United States v. Sriyuth*, 98 F.3d 739, 748 (3d Cir. 1996) (evidnce "strongly probative because it counters two central arguments advanced by [the defendant]"); *Galletta*, 662 F. App'x at 194–95 ("The evidence was even more probative in light of [defendant's] anticipated defense that he was not interested in engaging in sexual activity with minors but rather that he was only interested in having sexual conversations with adult men.").

Finally, there is little risk of *unfair* prejudice. The proffered testimony and exhibits are forensic and no more severe than the charged offenses. It is thus unlikely to further inflame the passions of the jury. Even if it were, where, as here, "evidence is highly probative, even a large risk of unfair prejudice may be tolerable." *Cross*, 308 F.3d at 323. Moreover, if the Court is concerned about potential prejudice, the Court can provide a limiting instruction to ameliorate that risk. *See United States v. Vosburgh*, 602 F.3d 512, 538 (3d Cir. 2010) (limiting instruction minimized risk of unfair prejudice by admission of child erotica).

## II. CERTIFIED BUSINESS RECORDS SHOULD BE ADMITTED WITHOUT A RECORDS CUSTODIAN

The United States intends to introduce at trial documentary exhibits from certain businesses, including Apple and PayPal.

The United States hereby provides notice to the Defendant under Rule 902(11) of its intent to rely on certifications for exhibits received from Apple and PayPal, to the extent they are in the Government's possession.[2] The United States requests that these exhibits be admitted on the basis of the certifications of the records custodians, without the need to call records custodians as witnesses (and notes a stipulation would moot this issue).

The Court's prerogative to make preliminary determinations regarding the application of the rules of evidence is set forth in Rule 104, which provides:

> The court must decide any preliminary question about whether a witness is qualified, a privilege exists, or evidence is admissible. In so deciding, the court is not bound by evidence rules, except those on privilege.

[2] The United States anticipates receiving certifications for certain business records on its exhibit list from PayPal and will make them available upon receipt.

This rule applies to all preliminary determinations, including the question of whether documents fall within the business records exception to the hearsay rule. *See In re Japanese Elec. Prod. Antitrust Litig.*, 723 F.2d 238, 287-88 (3d Cir. 1983), *rev'd on other grounds by Matsushita Elec. Ind. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986).

The prerequisites for admissibility under Rule 803(6) (or any other rule of evidence) must be established to the Court by a preponderance of the evidence. *In re Japanese Elec. Prod. Antitrust Litig.*, 723 F.2d at 287; *see also Bourjaily v. United States*, 483 U.S. 171, 175 (1987). Rule 803(6) provides that the following is not excluded by the hearsay rule:

> (6) Records of a Regularly Conducted Activity. A record of an act, event, condition, opinion, or diagnosis if:
>
>> (A) the record was made at or near the time by--or from information transmitted by--someone with knowledge;
>> (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
>> (C) making the record was a regular practice of that activity;
>> (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification.

As authorized by Rule 803(6), the United States seeks to establish the authenticity of the records in question, as well as their admissibility under Rule 803(6), through certifications obtained from the custodians of records, as contemplated in Rule 803(6). That rule references Rule 902(11), which provides for the authenticity of the following:

> (11) Certified Domestic Records of Regularly Conducted Activity. – The original or a copy of a domestic record that meets the requirements of Rule 803(6)(A)-(C), as shown by a certification of the custodian or another qualified person that complies with a federal statute or a rule prescribed by the Supreme Court. Before the trial or hearing, the proponent must give an adverse party reasonable written notice of the intent to offer the record--and must make the record and certification available for inspection--so that the party has a fair opportunity to challenge them.

The 902(11) certifications completed by the business records custodians will attest to the foundational requirements cited in these rules with respect to the exhibits, and the United States has complied with the advance notice requirement.

Here, the Apple and PayPay records are business records as that term is defined under Fed. R. Evid. 803(6). They are records of regularly conducted business activity made at or near the time of the activity by, or from information transmitted by, persons with knowledge; the records were kept in the course of the regularly conducted business activity; and it was the regular practice of the businesses to make these records. Each of the associated exhibits will be supported by an appropriate certification.

Accordingly, the United States respectfully requests that the Court admit these exhibits without the need for a records custodian to be called as a witness at trial.

## III. THE DEFENDANT SHOULD BE PRECLUDED FROM CONTESTING THE AUTHENTICITY, CHAIN OF CUSTODY, AND SCIENTIFIC ANALYSIS OF THE UNITED STATES'S EXHIBITS UNLESS HE COMPLIES WITH THE SUPPLEMENTAL SCHEDULING ORDER

The Court's Supplemental Scheduling Order requires the Defendant to file a notice on or before 14 days before trial if he wishes to contest the authenticity, chain of custody, and/or scientific analysis of any of the United States's exhibits. *See* ECF No. 24. The notice must contain a "statement delineating why the authenticity, chain of custody, and/or scientific analysis of the exhibit is being challenged and a certification that the challenge is being made in good faith;"; the United States's pre-marked exhibits "are deemed to have been accepted unless an objection is asserted." Thus, the Defendant must provide such notice by February 23, 2026.

If the Defendant has not provided the required notice by the deadline, the United States's pre-marked exhibits should be deemed accepted, and this Court should preclude the Defendant

from objecting to their authenticity, chain of custody, and scientific analysis.

## IV. THE DEFENDANT SHOULD BE ORDERED TO PROVIDE RECIPROCAL DISCOVERY AND EXPERT DISCLOSURES

Rule 16(b)(1)(A) of the Federal Rules of Criminal Procedure provides that if a defendant requests discovery under Federal Rule of Criminal Procedure 16(a)(1)(E), and the Government complies, then:

> [T]he defendant must permit the government, upon request, to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items if: (i) the item is within the defendant's possession, custody, or control; and (ii) the defendant intends to use the item in the defendant's case-in-chief at trial.

Fed. R. Crim. P. 16(b)(1)(A).

The Unites States has already made the required disclosures to the Defendant under Rule 16(a), and pursuant to the Court's Scheduling Order. The Defendant, to date, has neither made reciprocal disclosures to the United States nor identified any materials that may be used at trial. The United States, therefore, respectfully requests that the Court order the Defendant to provide the United States the appropriate discovery.

## V. THE UNITED STATES SHOULD BE ABLE TO OFFER THE DEFENDANT'S RECORDED STATEMENT

The Defendant's own statements, including in his recorded statement to law enforcement on or about January 22, 2024, are admissible by the United States as statements by a party opponent. Fed. R. Evid. 801(d)(2)(A); s*ee, e.g.*, *United States v. Hodge*, 85 F. App'x 278, 281 (3d Cir. 2003) (statements during a jail call were admissible against the defendant as his own admission); *United States v. Price*, 13 F.3d 711, 720 (3d Cir. 1994) ("Patently, [the defendant's] own statements during those [taped] conversations were not hearsay.") (citing Rule

801(d)(2)(A)); *United States v. Bivens*, 2023 WL 2926271, at *1 (11th Cir. Apr. 13, 2023) (unreported) ("As to Bivens' own statements made on the recorded jail calls, the court did not abuse its discretion finding his statements were not hearsay, as they were statements made by a party opponent . . . ."). Here, the United States expects to introduce the Defendant's statements acknowledging being sent naked photos of a child in the shower and his ownership of the iPhone, and asking what will happen if illegal pornography is found on his device.

While Rule 801(d)(2)(A) permits the United States to admit the Defendant's own statements in its case-in-chief, the Court should not permit the Defendant to do so. *See United States v. Evers*, 2022 WL 16748601, at *3 (M.D. Pa. Nov. 7, 2022) ("A defendant cannot elicit his or her own self-serving statements, offered in support of himself or herself, without taking the stand and submitting to cross-examination.") (citing *United States v. Willis*, 759 F.2d 1486, 1501 (11th Cir. 1985)). This is because Rule 801(d)(1) sets forth the prerequisites that must be established before a defendant may admit his own statement, one of which is that "[t]he declarant testifies and is subject to cross-examination about a prior statement." Unless the Defendant subjects himself to cross-examination and satisfied the remaining requirements of Rule 801(d)(1), the Defendant should be precluded from offering any of his statements as evidence.

## VI. THE DEFENDANT SHOULD BE PRECLUDED FROM REFERENCING POTENTIAL PUNISHMENT

It is well-established that a criminal defendant is not entitled to have the jury informed of the sentencing consequences of its decisions. According to the Third Circuit:

> In the federal courts, the role of the jury in a non-capital case is to determine whether the defendant is guilty or not guilty based on the evidence and the applicable rules of law. The jury is supposed to perform this role without being influenced in any way by what the consequences of its verdict might be.

*United States v. Fisher*, 10 F.3d 115, 121 (3d Cir. 1993); *see also United States v. Nguyen*, 344 F. App'x 821, 824 (3d Cir. 2009) ("[T]he jury ha[s] no sentencing function and should reach its verdict without regard to what sentence might be imposed.") (quoting *Rogers v. United States*, 422 U.S. 35, 40 (1975)). The Supreme Court has observed that:

> It is well established that when a jury has no sentencing function, it should be admonished to reach its verdict without regard to what sentence might be imposed. The principle that juries are not to consider the consequences of their verdicts is a reflection of the basic division of labor in our legal system between judge and jury. The jury's function is to find the facts and to decide whether, on those facts, the defendant is guilty of the crime charged. The trial judge, by contrast, imposes sentence on the defendant after the jury has arrived at a guilty verdict. Information regarding the consequences of a verdict is therefore irrelevant to the jury's task. Moreover, providing jurors sentencing information invites them to ponder matters that are not within their province, distracts them from their fact finding responsibilities, and creates a strong possibility of confusion.

*Shannon v. United States*, 512 U.S. 573, 579 (1994) (cleaned up). It also noted that, "as a general matter, jurors are not informed of mandatory minimum or maximum sentences." *Id.*; *see also United States v. Polouizzi*, 564 F.3d 142, 162 (2d Cir. 2009) (district court acted within its discretion by declining to instruct jury on mandatory minimum sentence).

Accordingly, the Court should preclude the Defendant from invading the province of the Court by referencing before the jury the potential punishment he faces.

## VII. THE UNITED STATES SHOULD BE PERMITTED TO INTRODUCE CHARTS AND OTHER SUMMARY EXHIBITS IN ITS CASE-IN-CHIEF

Pursuant to Federal Rule of Evidence 1006, the United States seeks the Court's approval to introduce various summary charts at trial. The United States may introduce summary charts of the Defendant's searches, messages, and financial transactions.

A party may use a summary chart "to prove the content of voluminous [records] that cannot be conveniently examined in court. . . . The proponent must make the originals or

duplicates available for examination or copying . . . by other parties at a reasonable time and place." Fed. R. Evid. 1006. Summary charts are admissible if: (1) the underlying records being summarized are admissible, *United States v. Manamela*, 463 F. App'x 127, 132 (3d Cir. 2012); (2) the records are voluminous to the point "that in-court examination would be an inconvenience," *United States v. Onque*, 169 F. Supp. 3d 555, 574 (D.N.J. 2015) (cleaned up); (3) the charts accurately summarize the underlying documents, *United States v. Malik*, 424 F. App'x 122, 128 (3d Cir. 2011); (4) the summary charts and the underlying documents were made available for inspection by the opposing side, *United States v. Georgiou*, 777 F.3d 125, 143 (3d Cir. 2015); and (5) a person involved in preparing or verifying the charts is available for cross, *United States v. Lynch*, 735 F. App'x 780, 785-86 (3d Cir. 2018).

The summary charts would satisfy Rule 1006's requirements. First, the summarized records, which come from data extractions and subpoenaed business records are themselves admissible. They are plainly relevant, as they relate to the Defendant's possession and transportation of CSAM. The statements in the records (for example, messages) are also non-hearsay because—as the United States will prove at trial—they were made by the Defendant. *See* Fed. R. Evid. 801(d)(2). To the extent the summary charts contain statements of the Defendant's counterparts, those statements are not hearsay because they are not being offered for the truth, but to provide background and for their effect on the listener.

In addition, the summary charts would concisely summarize what would be wholly impractical to review in Court, including for example, numerous records showing the Defendant's control over his devices and the data extracted from them. The summary charts will make the in-court presentation of this evidence more efficient for the Court and the jury.

Finally, the summary charts would accurately and fairly summarize the underlying documents, which have been made available to the Defendant (most, if not all, of which will still be marked and available as exhibits at trial). Indeed, the United States intends to introduce the summary charts through law enforcement witnesses who will verify their accuracy based on the underlying data and who will be available for cross-examination at trial.

## VIII. THE UNITED STATES SHOULD BE ALLOWED TO FILE ADDITIONAL MOTIONS AS NECESSARY

As trial preparation progresses, additional evidentiary issues may surface. The United States respectfully requests leave to file additional *in limine* motions addressing those issues.

## CONCLUSION

For the reasons set forth above, the United States respectfully requests that the Court grant its motions *in limine*.

Respectfully submitted,

TODD BLANCHE
U.S. Deputy Attorney General

PHILIP LAMPARELLO
Senior Counsel

/s/ Matthew Specht

By: Robert L. Toll
Matthew Specht
Assistant U.S. Attorneys

Dated: February 18, 2026
Newark, New Jersey

**CERTIFICATE OF SERVICE**

The undersigned certifies that, on this day I caused to be served, via the Court's Electronic Filing System ("ECF"), a copy of the Memorandum of Law of the United States in Support of Motions *in Limine* on all counsel of record.

Respectfully submitted,

TODD BLANCHE
U.S. Deputy Attorney General

PHILIP LAMPARELLO
Senior Counsel

By: /s/ Matthew Specht
Robert L. Toll
Matthew Specht
Assistant U.S. Attorneys

Dated: February 18, 2026
Newark, New Jersey