**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| UNITED STATES | : | |
| | : | |
| | : | **CRIM. NO. 25-802** |
| | : | |
| v. | : | |
| | : | |
| | : | **ORAL ARGUMENT REQUESTED** |
| | : | |
| JAYSON SETERA | : | |

---

# MEMORANDUM OF LAW IN SUPPORT OF MOTION TO SUPPRESS

---

Tyler Newman, Esq.
**MURPHY ORLANDO LLC**
494 Broad Street, 5th Floor
Newark, New Jersey 07102
(201) 451-5000
tnewman@murphyorlando.com
*Attorneys for Jayson Setera*

# **TABLE OF CONTENTS**

TABLE OF CONTENTS .......... i

TABLE OF AUTHORITIES .......... ii

INTRODUCTION .......... 1

I. LEGAL ARGUMENT. .......... 2

A. CBP And HSI's Search And Seizure Of The iPhone Violated The Fourth Amendment. .......... 3

B. The Months-Long Delays In Searching The iCloud, WhatsApp And Other Digital Devices/Accounts Were Unreasonable And Based On Factually Deficient Search Warrant Affidavits. .......... 9

CONCLUSION .......... 11

## TABLE OF AUTHORITIES

**Cases**

*Katz v. United States*, 389 U.S. 347 (1967) ........ 4

*Mincey v. Arizona*, 437 U.S. 385 (1978) ........ 4

*Riley v. California*, 573 U.S. 373 (2014) ........ 5, 7, 8, 9

*United States v. Adekunle,* 980 F.2d 985 (5th Cir.1992) ........ 8

*United States v. Asbury*, 586 F.2d 973 (2d Cir. 1978) ........ 8, 9

*United States v. Flores-Montano*, 541 U.S. 149 (2004) ........ 4

*United States v. Forsythe*, 560 F.2d 1127 (3d Cir. 1977) ........ 2

*United States v. Levy*, 2013 WL 664712, (S.D.N.Y. 2013), aff'd, 803 F.3d 120 (2d Cir. 2015) ... 8

*United States v. McNeese*, 901 F.2d 585 (7th Cir. 1990) ........ 2

*United States v. Montoya de Hernandez*, 473 U.S. 531 (1984) ........ 4, 7, 9

*United States v. Ramsey*, 431 U.S. 606 (1977) ........ 4

*United States v. Robinson*, No. 23-CR-192 (NRM), 2025 WL 1359352 (E.D.N.Y. May 9, 2025) ........ 6, 9

*United States v. Vega-Barvo*, 729 F.2d 1341 (11th Cir. 1984) ........ 8, 9

*United States v. Zimmerman*, 277 F.3d 426 (3d Cir. 2002) ........ 2

**Other Authorities**

U.S. Const. amend. IV ........ 5, 6

# INTRODUCTION

Jayson Setera is charged with allegedly transporting and possessing child pornography on his iPhone on January 22, 2024, when he reentered the United States at Newark International Airport on a flight from Narita, Japan. He was returning to the United States after a trip to Thailand, and was scheduled for a connecting flight to Oregon. After exiting the plane, Mr. Setera travelled to Customs for screening. There, the screening U.S. Customs and Border Protection ("CBP") officer selected Mr. Setera for secondary inspection based upon a nine-month-old one-sentence TECS lookout. Upon entering secondary inspection, an unlawful search and seizure occurred upon Mr. Setera and his iPhone. CBP and Homeland Security Investigations ("HSI"), for the reasons set forth below, did not have the requisite reasonable suspicion to execute the unlawful nonroutine search of Setera's iPhone and thus, the fruits of that search – including the subsequent interview – must be suppressed.

Indeed, as discussed at length below, the charges against Mr. Setera arise from a warrantless and suspicion-less search and seizure that CBP and HIS performed upon Mr. Setera's iPhone at Newark International Airport. This nonroutine search of Mr. Setera's phone, and the date contained therein, lacked reasonable suspicion, was unreasonable, and thus, violated the Fourth Amendment. After Mr. Setera was detained, CBP and HSI agents conducted an interview based upon their improper search of Mr. Setera's electronic devices. This interview was a direct result of the prior improper and illegal search, and thus, must also be suppressed as "fruit of the poisonous tree."

Further, subsequent to conducting the suspicionless and therefore, illegal search of Setera's iPhone at the border, the Government waited months to apply for search warrants to search Setera's iCloud and WhatsApp accounts. Not only were these applications unnecessarily delayed, but they

failed to even reference the sole basis for the nonroutine border search: a nine-month-old and one single-sentence TECS lookout.

## I. LEGAL ARGUMENT.

CBP and HSI conducted a warrantless search and seizure of Mr. Setera's electronic devices, a search and seizure which was not based on reasonable suspicion, much less probable cause. Although the government is afforded great latitude to conduct searches and seizures at the border, the intrusive nature of a cell phone search demands some articulable basis—probable cause or, at the very least, reasonable suspicion—to believe incriminating evidence will be discovered. *See* U.S. Const. amend. IV. The government lacked this when its agents opened and reviewed the contents of Mr. Setera's phone. Instead of any basis to justify its nonroutine border search – let alone reasonable suspicion – the CBP and HSI relied upon a nine-month-old vague one-sentence TECS lookout. [Exhibit A].[1] That was unreasonable, in violation of the Fourth Amendment, and merits suppression of the phone and its fruits. *United States v. Zimmerman*, 277 F.3d 426, 434 (3d Cir. 2002) ("It is well settled that[] [a]ge of the information supporting a warrant application is a factor in determining probable cause. If too old, the information nis stale, and probable cause may no longer exist.") (citing *United States v. Forsythe*, 560 F.2d 1127, 1132 & n.6 (3d Cir. 1977); *United States v. McNeese*, 901 F.2d 585, 596 (7th Cir. 1990)).

As a result of the aforementioned unconstitutional search of Mr. Setera's iPhone, CBP and HSI conducted an interview. Because this interview derived from the prior unlawful and unconstitutional search and seizure, the interview itself must also be suppressed. Indeed, without the improper nonroutine border search, the interview would not have been conducted and thus, without sufficient reasonable suspicion – none for that matter – to conduct the search, the interview

---

[1] All Exhibits cited herein are appended to the Certification of Tyler Newman, Esq., filed herewith.

must be likewise suppressed.

Finally, the Government's delays in obtaining a search warrant for Mr. Setera's digital records, iCloud account, and cellular records were unreasonably long, in violation of the Fourth Amendment. [Exhibits B, C, and D]. When it applied for the search warrants in March and June of 2024, the government had known for two and five months, respectively, all of the facts gleaned from their unconstitutional search which support probable-cause—including, most importantly, the existence of child pornography on Mr. Setera's iPhone. [*See id.*]. It also knew the sole basis for the nonroutine search of Setera's iPhone at the border: the stale and vague TECS lookout. [Exhibit A]. Yet, in the Government's belated application for the search warrants months after receiving the information necessary for same, the Government did not even reference the TECS lookout in its applications. The Government's lack of diligence in searching these electronic devices was unreasonable, legally and factually deficient, and merits suppression of the digital evidence obtained by way of the delayed and insufficient search warrant applications.

**A. CBP And HSI's Search And Seizure Of The iPhone Violated The Fourth Amendment.**

The Fourth Amendment protects "against unreasonable searches and seizures." U.S. Const. amend. IV. Before conducting a search, the government generally must obtain a warrant based "upon probable cause, supported by Oath or Affirmation," *Id.* "unless the exigencies of the situation make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment." *Mincey v. Arizona*, 437 U.S. 385, 393-94 (1978) (internal quotations omitted); *accord Katz v. United States*, 389 U.S. 347, 357 (1967) ("[S]earches conducted outside the judicial process are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." (footnote omitted)). At the border, Mr. Setera's iPhone was searched without a warrant and

without probable cause. The reasonableness of the warrantless and without probable cause search depends upon the resolution of two strands of conflicting Fourth Amendment jurisprudence.

On the one hand, the Supreme Court has long recognized that searches at the border generally can be performed without a warrant or probable cause. *United States v. Montoya de Hernandez*, 473 U.S. 531, 537 (1984). "The border-search exception is grounded in the recognized right of the sovereign to control, subject to substantive limitations imposed by the Constitution, who and what may enter the country," and has a historical tradition dating "from before the adoption of the Fourth Amendment." *United States v. Ramsey*, 431 U.S. 606, 619-20 (1977). In relieving the government of the probable cause and warrant burdens for border searches, the Court has observed that the government's interest in "preventing the entry of unwanted persons and effects is at its zenith at the international border," including at an airport's customs zone. *United States v. Flores-Montano*, 541 U.S. 149, 152 (2004). Conversely, an individual traveler has a diminished expectation of privacy when attempting to enter the United States, given the government's profound interest in preventing contraband from entering and the common experience of being stopped and questioned at the border. *See Flores-Montano*, 541 U.S. at 154 ("[W]e have noted that the expectation of privacy is less at the border than it is in the interior.").

However, a more recent line of cases acknowledges that searches of cell phones and other electronic devices can only be performed with a warrant and probable cause. One example of such a ruling was established in *Riley v. California*, 573 U.S. 373 (2014), where the Supreme Court held that law enforcement must obtain a warrant based upon probable cause to search a cell phone seized incident to arrest, even though a search in that circumstance typically would not be subject to those requirements. *Id.* at 382-85, 403. Since the *Riley* decision, courts have

held that a warrant based upon probable cause is **necessary** to search a cell phone recovered in plain view during an otherwise lawful search, or in the course of a lawful search of a car—circumstances where, typically, the Fourth Amendment demands less.

These cases have declined to make exceptions from the warrant probable cause requirements for cell phone searches because of the immense privacy interests at stake in modern cell phones. As the Court in *Riley* observed, "[c]ell phones differ in both a quantitative and a qualitative sense from other objects that might be kept on an arrestee's person." 573 U.S. at 393. Much of this is due to the immense storage availability of phones, which allows "[t]he sum of an individual's private life [to] be reconstructed through a thousand photographs labeled with dates, locations, and descriptions." *Id.* at 393-94. By searching such devices, the government is giving itself access "in digital form [to] many sensitive records previously found in the home," as well as "a broad array of private information never found in a home in any form—unless the phone is." *Id.* at 396-97.

The government's interest in conducting an immediate and warrantless search of a cell phone also tends to be limited, both technologically and physically. "Digital data stored on a cell phone cannot be used as a weapon to harm an arresting officer," the evidence it contains can typically be preserved through turning off the phone, removing its battery, or disconnecting it from the cellular network – all of which fall short of an exigent search. *Id.* at 387, 390-91. "Once an officer has secured a phone and eliminated any potential physical threats . . . data on the phone can endanger no one." *Id.* at 387. Further, with cloud computing and storage, much of the evidence the government intends to search on a cell phone may not physically be contained on that phone, but on a cloud server which is accessed remotely. *Id.* at 397. The remoteness of cloud-based data accessed by cell phones only expands the scope of the government's search

because it is not just a search of the actual phone, but parts of the remote cloud servers it may access. *Id.* This also serves to diminish the need for an ***immediate*** search of the cell phone before a warrant is obtained since the data can be found elsewhere apart and separate from the physical device. *Id.*

Neither the Supreme Court nor the Third Circuit has addressed how these doctrines should be reconciled where the government seeks to search a cell phone at the border. Although this issue appears to be a matter of first impression before this Circuit, an eerily similar matter out of the District Court for the Eastern District of New York played out in the Defendant's favor. In *United States v. Robinson*, No. 23-CR-192 (NRM), 2025 WL 1359352 (E.D.N.Y. May 9, 2025), the defendant was stopped at John F. Kennedy International Airport on the basis of a three-year-old one-sentence TECS lookout that identified him as a potential purchaser of child pornography. Based upon the staleness of the single factually limited TECS lookout, the District Court found that such a lookout did not "create the requisite reasonable suspicion that might allow the person's electronic devices to be searched upon reentry into the country. . . ." 2025 WL 1359352, at *18. Upon granting Robinson's Motion to Suppress the fruits of the unlawful border search, the Government appealed, and that appeal is currently pending in the Second Circuit. *See United States v. Robinson*, No. 25-1428 (2d Cir.). As such, Defendant argues there are only two possible avenues to resolving these competing Fourth Amendment doctrines, both of which entitle Mr. Setera to relief – the suppression of the evidence seized at Newark International Airport.

First, the Court should find that the border exception is inapplicable where the item to be searched is, as here, an iPhone. The border exception is no different than other exceptions to the Fourth Amendment: the search-incident-to-arrest, plain-view, and automobile exceptions – none of which apply to searches of a cell phone. And this only makes sense given the uniquely great

privacy interests inherent in a cell phone, which outweigh the comparatively lower government interests in the ***immediate*** search of a phone, even in the context of a search at the border. *See Riley*, 573 U.S. at 393-94.

Second, the Court should find that the government had neither the probable cause nor reasonable suspicion required before being permitted to search Mr. Setera's phone at the border. Indeed, rather than having probable cause or reasonable suspicion, the border search was premised on a nine-month-old one-sentence TECS lookout. [Exhibit A]. As such, the search of Mr. Setera's cell phone was in violation of his Fourth Amendment rights on this theory as well.

The border-search doctrine does not authorize suspicionless searches in every case. Rather, suspicionless searches are only legal for "routine" searches or invasions of privacy that a reasonable traveler would expect upon entering the United States. *Montoya de Hernandez*, 473 U.S. at 538. These would include searches of a luggage, wallet, or a pat down—the kinds of searches that are routine and regularly conducted at airports and border-crossings. Suspicionless searches, however, are prohibited for more invasive intrusions upon a traveler's privacy that exceed the reasonable expectations of privacy – a.k.a ***nonroutine searches***. *See id.* Thus, the government may subject a person to a nonroutine search, like a cavity search at the border, **only upon a showing of reasonable suspicion**. *Montoya de Hernandez*, 473 U.S. at 541. Like cavity searches, other nonroutine searches such as strip searches, x-ray examinations and the search and copy of personal papers, are considered nonroutine due to the significant intrusion on a traveler's privacy. *Id.*; *United States v. Asbury*, 586 F.2d 973, 976 (2d Cir. 1978) (strip searches); *United States v. Vega-Barvo*, 729 F.2d 1341, 1348 (11th Cir. 1984) (x-ray examinations); *United States v. Adekunle,* 980 F.2d 985, 987–88 (5th Cir.1992) (strip search); *United States v. Levy*, 2013 WL 664712, at *12 (S.D.N.Y. 2013), aff'd, 803 F.3d 120 (2d Cir.

2015). While technically different from personal physical intrusions, modern cell phones contain just as much, if not more private, personal, and sensitive information than a strip search or x-ray would reveal. *See Riley*, 573 U.S. at 393. In fact, the *Riley* Court expressly addressed the invasiveness of cell phone searches, noting:

> Modern cell phones, as a category, implicate privacy concerns far beyond those implicated by the search of a cigarette pack, a wallet, or a purse. A conclusion that inspecting the contents of an arrestee's pockets works no substantial additional intrusion on privacy beyond the arrest itself may make sense as applied to physical items, but any extension of that reasoning to digital data has to rest on its own bottom.
>
> Cell phones differ in both a quantitative and qualitative sense from other objects that might be kept on an arrestee's person. The term "cell phone" is itself misleading shorthand; many of these devices are in fact minicomputers that also happen to have the capacity to be used as telephones. They could just as easily be called cameras, video players, rolodexes, calendars, tape recorders, libraries, diaries, albums, televisions, maps, or newspapers.
>
> One of the most notable distinguishing features of modern cell phones is their immense storage capacity. Before cell phones, a search of a person was limited by physical realities and tended as a general matter to constitute only a narrow intrusion on privacy. Most people cannot lug around every piece of mail they have received for the past several months, every picture they have taken, or every book or article they have read – nor would they have any reason to attempt to do so. And if they did, they would have to drag behind them a trunk of the sort held to require a search warrant . . . rather than a container the size of [a] cigarette package.

*Id.* at 393-94.

Accordingly, CBP and HSI's search of Mr. Setera's cell phone was not routine but was a significant invasion of his privacy rights. Under *Riley*, a warrant and probable cause were necessary before the search could begin. At a minimum, as cases like *Riley*, *Montoya*, *Asbury*, and *Vega-Bravo* illustrate, reasonable suspicion was required for the nonroutine and invasive search of Setera's electronic devices. The Government, based on its own records, had no

probable cause, no reasonable suspicion, and no warrant. Lacking such suspicion, much less a warrant, the Government violated the Fourth Amendment when it conducted the border search of Mr. Setera's iPhone. As a result, the phone and its fruits should be suppressed.

### B. The Months-Long Delays In Searching The iCloud, WhatsApp And Other Digital Devices/Accounts Were Unreasonable And Based On Factually Deficient Search Warrant Affidavits.

Months after the suspicionless and warrantless border search occurred, the Government belatedly acquired search warrants for Setera's iCloud, WhatsApp and other digital devices/accounts. [Exhibits B, C and D]. Not only were these warrant applications unnecessarily delayed – the first warrant for Setera's WhatsApp and phone logs was executed on March 27, 2024, and the second one for his iCloud account on June 14, 2024 – they also failed to point to the sole allegation of suspicion and wrongdoing that prompted the illegal border search: the one-sentence TECS lookout. [*Id.*]. Again, the District Court in *Robinson* opined on the issue of the untimely and factually deficient search warrant applications executed subsequent to Robinson's unlawful search at the border.

There, like here, none of the subsequent search warrant affidavits submitted by the Government agents included a single reference to the TECS lookout – which the Government admitted was the sole basis of the original stop and search at JFK and thus, the very information relied upon to illustrate reasonable suspicion. *Robinson*, 2025 WL 1359352, at *21. The *Robinson* court found that the omissions – of the TECS lookout from search warrant affidavits – amounted to, at the very least, a "reckless disregard for the truth." *Id.* at *24 (internal citations omitted). The same analysis and material void of information – namely, the TECS lookout – from any search warrant affidavits is analogous to the instant matter. Indeed, none of the search warrant applications even reference the TECS lookout, yet, per every CBP and HSI report, the January 22,

2024, stop and search of Setera's electronic devices was prompted **solely** because of a nine-month-old one-sentence TECS lookout. [*See generally* Exhibits B, C (p. 11-23) and D (p. 6-23)]. This is especially problematic as the TECS lookout was the ONLY evidence of any alleged wrongdoing on the part of Setera. [Exhibit A]. CBP and HSI did not note a single additional reason for the stop and search at Newark International Airport – because they had no other reason or suspicion for the stop and search. As discussed above, the vague and stale TECS lookout did not give rise to reasonable suspicion to justify the nonroutine border search of Setera's iPhone, *see supra* § II.A, and without even referencing the TECS lookout in the subsequent delayed warrant applications, those applications were legally and factually deficient. Thus, not only should the immediate fruits of the illegal border search be suppressed, but the subsequent findings produced by the search of Setera's iCloud, WhatsApp and other digital devices/accounts, should also be suppressed on this individually adequate ground.

## CONCLUSION

For the foregoing reasons, the Court should suppress the iPhone, iCloud, Whatsapp and other digital devices/accounts seized from Mr. Setera on January 22, 2024, and any derivative fruits, including any and all statements he made during his interview with HSI Agents as the illegal search precipitated said interview. At a minimum, an evidentiary hearing should be held to the extent there is a dispute regarding the facts of the search and seizure of the devices and the subsequent interrogation of Mr. Setera.

Respectfully submitted,

Tyler Newman, Esq.

**MURPHY ORLANDO LLC**
494 Broad Street, 5th Floor
Newark, New Jersey 07102
(201) 451-5000
tnewman@murphyorlando.com
*Attorneys for Jayson Setera*