UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Hon. Jamel K. Semper |
| | : | |
| v. | : | |
| | : | |
| JAYSON SETERA | : | Crim. No. 25-802 |

---

**MEMORANDUM OF LAW OF THE UNITED STATES IN OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS**

---

TODD BLANCHE
U.S. Deputy Attorney General

PHILIP LAMPARELLO
Senior Counsel

970 Broad Street, Suite 700
Newark, New Jersey 07102
(973) 645-2700

ROBERT L. TOLL
MATTHEW SPECHT
Assistant U.S. Attorneys

**TABLE OF CONTENTS**


**PAGE**

TABLE OF AUTHORITIES ........ iii

PRELIMINARY STATEMENT ........ 1

STATEMENT OF FACTS AND PROCEDURAL HISTORY ........ 2

ARGUMENT ........ 4

I. UNDER THE BORDER SEARCH EXCEPTION TO THE FOURTH AMENDMENT, ROUTINE SEARCHES REQUIRE NO REASONABLE SUSPICION, AND NON-ROUTINE SEARCHES REQUIRE ONLY REASONABLE SUSPICION ........ 5

A. The Government's Searches of Defendant's Electronic Devices Were Routine and Required No Particularized Suspicion, Much Less a Warrant on Probable Cause ........ 7

B. Searches of Electronic Devices at the Border Are Routine ........ 8

C. In the Alternative, Reasonable Suspicion Supported the Search of Defendant's iPhone ........ 12

II. UNDER THE GOOD FAITH EXCEPTION, SUPPRESSION IS UNWARRANTED ........ 15

III. DEFENDANT'S MIRANDIZED STATEMENTS SHOULD NOT BE SUPPRESSED ........ 19

CONCLUSION ........ 20

# TABLE OF AUTHORITIES

**PAGE(S)**

**Cases**

*Alabama v. White*,
496 U.S. 325 (1990) .......... 12

*Alasaad v. Mayorkas*,
988 F.3d 8 (1st Cir. 2021) .......... 8, 9

*Bradley v. United States*,
299 F.3d 197 (3d Cir. 2002) .......... 6, 7, 9

*Bryan v. United States*,
913 F.3d 356 (3d Cir. 2019) .......... 6-7

*Davis v. United States*,
131 S. Ct. 2419 (2011) .......... 16

*Kansas v. Glover*,
589 U.S. 376 (2020) .......... 12, 13

*Navarette v. California*,
572 U.S. 393 (2014) .......... 12

*Riley v. California*,
573 U.S. 373 (2014) .......... 7-8

*United States v. Arvizu*,
534 U.S. 266 (2002) .......... 12, 13

*United States v. Bunty*,
617 F. Supp. 2d 359 (E.D. Pa. 2008) .......... 10

*United States v. Cano*,
934 F.3d 1002 (9th Cir. 2019) .......... *passim*

*United States v. Castillo*,
70 F.4th 894 (5th Cir. 2023) .......... 9

*United States v. Cotterman*,
709 F.3d 952 (9th Cir. 2013) ... 11, 15

*United States v. Flores-Montano*,
541 U.S. 149 (2004) ... 1, 6-7

*United States v. Hyde*,
37 F.3d 116 (3d Cir. 1994) ... 5, 6

*United States v. Katzin*,
769 F.3d 163 (3d Cir. 2014) ... *passim*

*United States v Kiam*,
432 F.3d 524 (3d Cir. 2006) ... 19

*United States v. Kolsuz*,
890 F.3d 133 (4th Cir. 2018) ... *passim*

*United States v. Leon*,
468 U.S. 897 (1984) ... 16, 17

*United States v. Linarez-Delgado*,
259 F. App'x 506 (3d Cir. 2007) ... 8-9, 10

*United States v. Maile*,
19-cr-347 (D.N.J. Mar. 19, 2021) ... 11

*United States v. Marasco*,
487 F.3d 541 (8th Cir. 2007) ... 19

*United States v. Mendez*,
103 F.4th 1303 (7th Cir. 2024) ... 9

*United States v. Molina-Isidoro*,
884 F.3d 287 (5th Cir. 2018) ... 17

*United States v. Montoya de Hernandez*,
472 U.S. 531 (1985) ... *passim*

*United States v. Ramsey*,
431 U.S. 606 (1977) ... 1, 5, 6

*United States v. Ramirez*,
2019 WL 3502913 (W.D. Tex. Aug. 1, 2019) ............................................................... 15

*United States v. Ray*,
704 F. App'x 132 (3d Cir. 2017)................................................................................. 13

*United State v. Robinson*,
23-CR-192 (NRM), 2025 WL 1359352 (E.D.N.Y. May 9, 2025)..................................... 14, 17

*United States v. Schoor*,
597 F.2d 1303 (9th Cir. 1979)...................................................................................... 13

*United States v. Smasal*,
No. CRIM. 15-85 JRT/BRT, 2015 WL 4622246 (D. Minn. June 19, 2015) ........................... 11

*United States v. Smith*,
673 F. Supp. 3d 381 (S.D.N.Y. 2023) .......................................................................... 18

*United States v. Sokolow*,
490 U.S. 1 (1989) ....................................................................................................... 12

*United States v. Sultanov*,
742 F. Supp. 3d 258 (E.D.N.Y. 2024).......................................................................... 18

*United States v. Torres*,
534 F.3d 207 (3d Cir. 2008)......................................................................................... 13

*United States v. Touset*,
890 F.3d 1227 (11th Cir. 2018)............................................................................. *passim*

*United States v. Verma*,
2010 WL 1427261 (S.D. Tex. Apr. 8, 2010) ................................................................. 14

*United States v. Walden*,
24-cr-521 (GRB), 2025 WL 3154359 (E.D.N.Y. Nov. 12, 2025) ........................................... 18

*United States v. Whitted*,
541 F.3d 480 (3d Cir. 2008)................................................................................... *passim*

**<u>Constitutional Provisions</u>**

U.S. Const. Amend. IV ........................................................................................... 5

**Other Authorities**

U.S. Customs & Border Patrol, "Inspection of Electronic Devices" (rev. Dec. 2015), available at https://www.cbp.gov/sites/default/files/assets/documents/2022-Jul/Inspection%20of%20Electronic%20Devices%20Tearsheet%20Dec%202015%20%28508%29.pdf ........ 2

U.S. Dep't of Homeland Security, "Privacy Impact Assessment Update for the TECS System: CBP Primary and Secondary Processing (TECS) National SAR Initiative" (Aug. 5, 2011), *available at* https://www.dhs.gov/sites/default/files/publications/privacy-pia-cbp-tecs-sar-update_0.pdf ........ 2-3

## PRELIMINARY STATEMENT

The U.S. Supreme Court has long counseled that "[t]he Government's interest in preventing the entry of unwanted persons and effects is at its zenith at the international border." *United States v. Flores-Montano*, 541 U.S. 149, 152 (2004). Indeed, "[t]ime and again, [the Supreme Court has] stated that 'searches made at the border, pursuant to the longstanding right of the sovereign to protect itself by stopping and examining persons and property crossing into this country, are reasonable simply by virtue of the fact that they occur at the border.'" *Id.* at 152-53 (quoting *United States v. Ramsey*, 431 U.S. 606, 616 (1977)).

On January 22, 2024, defendant Jayson Setera presented himself and three electronic devices for re-admission into the United States at Newark Liberty International Airport ("Newark Airport"), following his arrival on an international flight. Pursuant to border search authority dating back to "the founding of our Republic," *United States v. Montoya de Hernandez*, 473 U.S. 531, 537 (1985), Customs and Border Patrol ("CBP") manually searched his electronic devices. Upon finding child pornography on Defendant's iPhone 11 (the "iPhone"), CBP officers seized his electronic devices and sent them to Homeland Security Investigations' ("HSI") office in Newark for a full forensic review. That forensic review revealed approximately 170 photos and 8 videos containing child sexual abuse material, most of which contained pre-pubescent victims.

Defendant now asks the Court to ignore this history and become the first court in the Third Circuit to hold that a border search for classic contraband requires a search warrant on probable cause.[1] He also asks the Court to suppress the *Mirandized* statement he later made, along with

[1] A few district courts within the Second Circuit have recently found that border searches of cellphones require a probable cause showing. These outlier cases are discussed in Part II, *infra*.

evidence subsequently obtained from search warrants. The Court should reject these requests.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

The facts underlying this case are serious but straightforward. On January 22, 2024, Defendant landed at Newark Airport after returning from a trip to Thailand, by way of a connecting flight from Japan. As Defendant passed through customs, he was referred for additional screening due to being a positive match to a TECS alert—a system used by border officers to assist with screening and determining admissibility of individuals arriving at the border—pertaining to possible possession of child sexual exploitation material.[2] The TECS alert, dated April 12, 2023, requested a basic electronic media search for child pornography, as Defendant was suspected of purchasing child pornography online. *See* Ex. A. to Def's Mot. ("advise basic electronic media search for child porn, subject suspected of purchasing child porn online.").

CBP officers first asked Defendant routine baggage declaration questions to establish ownership of his luggage, which he confirmed. He then provided his phone number and email address. Due to the nature of the lookout for possible child sexual exploitation material, CBP officers conducted a lawful, basic search of Defendant's three electronic devices. Prior to the search, Defendant was provided with CBP's "Inspection of Electronic Devices" tear sheet, advising him as to CBP's authority to search his belongings for contraband.[3] Defendant complied

---

[2] TECS is an information-sharing platform, owned and managed by CBP. It is the principal system used by officers at the border to assist with screening and determinations regarding admissibility of arriving persons. *See* U.S. Dep't of Homeland Security, "Privacy Impact Assessment Update for the TECS System: CBP Primary and Secondary Processing (TECS) National SAR Initiative" (Aug. 5, 2011), *available at* https://www.dhs.gov/sites/default/files/publications/privacy-pia-cbp-tecs-sar-update_0.pdf

[3] U.S. Customs & Border Patrol, "Inspection of Electronic Devices" (rev. Dec. 2015), available at

with CBP's request to search and voluntarily turned over two cellphones and one laptop computer. He also voluntarily provided the passcodes for the devices. After a brief search, a CBP officer discovered child pornography on his iPhone. CBP officers seized the devices and turned them over to HSI agents for further investigation. *See* Exhibit 1.

Shortly thereafter, while still at Newark Airport, HSI agents conducted their own manual review of the iPhone. This basic search yielded images of child sexual abuse material ("CSAM") in Defendant's iPhone photo album. *See* Exhibit 2. Agents also discovered WhatsApp conversations between Defendant and a woman named "Crystal," in which Defendant requested "a good sexy video call with your girls," and asked "[w]hen will you call me so I can see them naked[?]" After sending her money and requesting "to see your girls pussy," "Crystal" sent Defendant approximately four images and videos of nude prepubescent females.[4] *See* Exhibit 3.

Following the manual review, HSI agents conducted a recorded interview of Defendant. The agents began by asking him questions about the reason for his travel. Most of the conversation revolved around the purported reason for his trip abroad. He claimed he traveled to file a police report because his purported girlfriend, "Yui," stole his money. *See* Exhibit 2. Agents then read Defendant his *Miranda* rights and provided him with a printed copy of his rights, which he acknowledged and signed. *Id.* Defendant continued to answer questions without a lawyer present.

---

https://www.cbp.gov/sites/default/files/assets/documents/2022-Jul/Inspection%20of%20Electronic%20Devices%20Tearsheet%20Dec%202015%20%28508%29.pdf

[4] Financial records confirm Defendant sent money to an account linked to the e-mail address associated with "Crystal."

Over 50 minutes into the interview, agents told Defendant that CBP found inappropriate pictures of children on his electronic devices. Defendant eventually acknowledged that "Yui" sent him pictures of her elementary school-aged daughter, including of her in the shower. Defendant told the agents "I didn't think it was a big deal. It was just in the shower." When the agents followed up by asking if Defendant asked "Yui" to send him the naked pictures of her daughter, Defendant invoked his *Miranda* rights by stating his desire to no longer answer questions. The questioning ceased. *Id.*

Following the interview, the HSI agents seized Defendant's electronic devices and sent them to HSI's offices in Newark for a full forensic review. That forensic review, completed by February 21, 2024—less than one month after Defendant's arrival at Newark Airport—uncovered approximately 170 photos and 8 videos containing CSAM, most of which involved pre-pubescent victims. A subsequent search warrant executed on Defendant's iCloud account revealed additional files depicting CSAM (and at least some of the files found directly on Defendant's iPhone).

On February 4, 2025, Defendant was charged by complaint with possessing and transporting child pornography. ECF No. 1. On December 19, 2025, he was indicted on those same charges. ECF No. 15. He filed a motion to suppress (the "Motion") on February 18, 2026. ECF No. 30. Trial is scheduled to commence on March 10, 2026.

## ARGUMENT

Under the well-established border search exception to the Fourth Amendment's warrant requirement, the Court should deny Defendant's motion to suppress the fruits of the border search. First, no level of suspicion—let alone a warrant based on probable cause—was required for the

initial, manual search of Defendant's iPhone that turned up the child pornography image, nor for the subsequent forensic search conducted at HSI. Second, even if reasonable suspicion were required, the Government easily had reasonable suspicion that Defendant was attempting to bring contraband into the United States because the TECS alert said "subject suspected of purchasing child porn online.". Finally, even if this Court were to become the first in this Circuit to hold that a search at the border for incoming contraband requires a search warrant supported by probable cause (and it should not), the Court still should deny the motion to suppress under the good faith exception to the exclusionary rule.

## I. UNDER THE BORDER SEARCH EXCEPTION TO THE FOURTH AMENDMENT, ROUTINE SEARCHES REQUIRE NO SUSPICION AND NON-ROUTINE SEARCHES REQUIRE ONLY REASONABLE SUSPICION

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. Amend. IV. Courts have acknowledged exceptions to the warrant requirement that "recognize that in certain limited situations the government's interest in conducting a search without a warrant outweighs the individual's privacy interest. Border searches are one such exception." *United States v. Hyde*, 37 F.3d 116, 118 (3d Cir. 1994) (internal quotations and citations omitted). The border search exception is a "longstanding, historically recognized exception to the Fourth Amendment's general principle that a warrant be obtained." *Ramsey*, 431 U.S. at 621. At the border, the Government has a heightened interest in interdicting contraband and the individual has a diminished privacy interest, so "the Fourth Amendment balance between the interests of the Government and the privacy right of the individual is . . . struck much more favorably to the Government at the border." *Montoya de Hernandez*, 473 U.S. at 539-40.

Indeed, as the Supreme Court has observed, "[s]ince the founding of our Republic, Congress has granted the Executive plenary authority to conduct routine searches and seizures at the border, without probable cause or a warrant, in order to regulate the collection of duties and to prevent the introduction of contraband into this country." *Id.* at 537 (citing *Ramsey*, 431 U.S. at 616-617). Accordingly,

> the Fourth Amendment's balance of reasonableness is qualitatively different at the international border than in the interior. Routine searches of the persons and effects of entrants are not subject to any requirement of reasonable suspicion, probable cause, or warrant . . . .

*Id.* at 538 (citing *Ramsey* and other cases). "The principle that searches at a border, without probable cause and without a warrant, are nonetheless 'reasonable' is 'as old as the Fourth Amendment itself.'" *Hyde*, 37 F.3d at 118 (quoting *Ramsey*, 431 U.S. at 619). Indeed, border searches ordinarily "are reasonable simply by virtue of the fact that they occur at the border." *Flores-Montano*, 541 U.S. at 152-53.[5]

This Court is bound by well-established precedent holding that "routine searches of the persons and effects of entrants are not subject to any requirement of reasonable suspicion, probable cause, or warrant," while "nonroutine searches require reasonable suspicion." *Bryan v. United States*, 913 F.3d 356, 361 (3d Cir. 2019) (cleaned up) (quoting *Montoya de Hernandez*, 473 U.S. at 538; and *Bradley v. United States*, 299 F.3d 197, 204 n.8 (3d Cir. 2002)). "This approach to border searches applies with equal force at 'the functional equivalent' of the border," *Bryan*, 913

---

[5] Even Defendant correctly observes that "an individual traveler has a diminished expectation of privacy when attempting to enter the United States, given the government's profound interest in preventing contraband from entering and the common experience of being stopped and questioned at the border." Def's. Mot. at 4 (citing *Flores-Montano*, 541 U.S. at 154).

F.3d at 361, which includes "[i]mmigration checkpoints at international airports," *See Bradley*, 299 F.3d at 201.

Determining whether a border search is "routine" (requiring no suspicion) or "non-routine" (requiring reasonable suspicion) depends on "the degree to which it intrudes on a traveler's privacy." *United States v. Whitted*, 541 F.3d 480, 485 (3d Cir. 2008) (citing *Bradley*, 299 F.3d at 204; and reaffirmed in *Bryan*, 913 F.3d at 362). More particularly, "[a]s the Supreme Court has held, 'highly intrusive searches of the person' that implicate the 'dignity and privacy interests of the person being searched' require reasonable suspicion." *Id.* at 485 (quoting *Flores-Montano*, 541 U.S. at 152). "Accordingly," the Third Circuit continued, "patdowns, frisks, luggage searches, and automobile searches, involving neither a high expectation of privacy nor a seriously invasive search, are routine [citing *Flores-Montano* and other cases], whereas body cavity searches, strip searches, and x-ray examinations are considered nonroutine by virtue of their significant intrusion on an individual's privacy [citing *Montoya de Hernandez* and other cases]." *Id.* at 485-86 (internal footnotes and citations omitted). Based on that test, the Third Circuit found that a cruise ship cabin is analogous to a residence, and therefore that reasonable suspicion—but *not* probable cause or a warrant—is required to search it at the border. The Court added that "[r]easonable suspicion is not a high standard," but instead "sets a relatively low threshold that will continue to permit the kind of cabin searches customs officers currently conduct." *Id.* at 489.

### A. The Government's Searches of Defendant's Electronic Devices Were Routine and Required No Particularized Suspicion, Much Less a Warrant on Probable Cause

Contrary to Defendant's contention that a search warrant based on probable cause was required, no particularized suspicion was required for the searches at issue here. Defendant's

reliance on the Supreme Court's decision in *Riley v. California*, 573 U.S. 373 (2014) is overstated. *Riley* discusses an individual's privacy interest in their cellphones in the context of a search incident to arrest. *See* 573 U.S. at 401-02 (ruling that "other case-specific exceptions may still justify a warrantless search of a particular phone"). Indeed, the rationales for a search incident to arrest—officer safety and the need to prevent the destruction of evidence—are not the rationales for a border search, as multiple courts of appeals have recognized. *See, e.g.*, *Alasaad v. Mayorkas*, 988 F.3d 8, 16-17 (1st Cir. 2021) ("*Riley* does not command a warrant requirement for border searches of electronic devices, nor does the logic behind *Riley* compel us to impose one"); *United States v. Kolsuz*, 890 F.3d 133, 142 (4th Cir. 2018) (similar); *United States v. Cano*, 934 F.3d 1002, 1015 (9th Cir. 2019) (similar); *cf.* Def's Mot. at 5 ("'Digital data stored on a cell phone cannot be used as a weapon to harm an arresting officer'") (quoting *Riley*).

This Court should decline Defendant's invitation to extend *Riley* into a context that has already been rejected by multiple courts of appeals. And here, the Supreme Court's border search decisions in *Montoya de Hernandez* and *Flores-Montano*, as interpreted by the Third Circuit in *Whitted* and elsewhere, support denial of Defendant's motion. These cases establish that even invasive border searches of a traveler's *body*, such as a strip search, require only reasonable suspicion and no warrant. It would defy logic to subject searches of a traveler's *cellphone* to a higher standard. This Court should apply this precedent and reject Defendant's request.

**B. Searches of Electronic Devices at the Border are Routine**

Given that the Third Circuit approved the warrantless border search of a camcorder, *a fortiori*, the search of electronic devices at the border is routine and does not require a warrant. *See United States v. Linarez-Delgado*, 259 F. App'x 506, 507-08 (3d Cir. 2007) (non-precedential)

(upholding under border search authority, without requiring a warrant or even reasonable suspicion, search of video that provided evidence that the defendant "might be a suspected drug trafficker for whom a warrant had been issued"); *Bradley*, 299 F.3d at 201, 203-04 (finding patdown that included "the inspector 'us[ing] her fingers to inappropriately push on [Bradley's] breasts and into the inner and outer labia'" through clothing to be a routine search requiring no individualized suspicion, much less probable cause or a warrant).

This logic accords with the consensus among courts of appeals to consider the issue, which have held that "brief, manual searches of a traveler's electronic device" are routine border searches requiring no individualized suspicion at all. *United States v. Mendez*, 103 F.4th 1303, 1307 (7th Cir. 2024); *see also United States v. Castillo*, 70 F.4th 894, 897-98 (5th Cir. 2023) (holding that for "manual cell phone searches at the border," circuits "have uniformly held" that no warrant or reasonable suspicion is required); *Alasaad*, 988 F.3d at 17 ("[B]asic border searches [of electronic devices] are routine searches and need not be supported by reasonable suspicion."); *Cano*, 934 F.3d at 1016, 1018 ("[M]anual searches of cell phones at the border are reasonable without individualized suspicion.").

The Eleventh Circuit has held that a *forensic* search of an electronic device at the border requires no individualized suspicion. *See United States v. Touset*, 890 F.3d 1227, 1233 (11th Cir. 2018). In *Touset*, the Eleventh Circuit noted that "[t]he Supreme Court has never required reasonable suspicion for a search of property at the border, however non-routine and intrusive, and neither have we." *Id.* It distinguished cases involving "highly intrusive searches of a person's body," explaining that "[a] forensic search of an electronic device is not like a strip search or an x-ray; it does not require border agents to touch a traveler's body, to expose intimate body parts,

or to use any physical force against him." *Id.* at 1234. In contrast, the Fourth and Ninth Circuits have concluded that reasonable suspicion is required for *forensic* searches of electronic devices at the border. *See Kolsuz*, 890 F.3d at 144; *Cano*, 934 F.3d at 1016. But *no* Court of Appeals has ever held that forensic searches require a warrant or probable cause.

Indeed, as the Third Circuit has observed in upholding the denial of a motion to suppress a videotape found and viewed during a border search,

> Customs Officers exercise broad authority to conduct routine searches and seizures for which the Fourth Amendment does not require a warrant, consent, or reasonable suspicion. The Customs Officer's viewing of the videotape here was permissible as part of the key function of his job, to ensure that contraband does not enter the United States. . . . Data storage media and electronic equipment, such as films, computer devices, and videotapes, may be inspected and viewed during a reasonable border search.

*Linarez-Delgado*, 259 F. App'x at 508 (internal citations omitted). Similarly, the U.S. District Court for the Eastern District of Pennsylvania denied a motion to suppress the fruits of a manual search at an international airport and a later forensic search of electronic media that turned up evidence of CSAM offenses because such searches were "routine" and therefore "not subject to any requirement of reasonable suspicion, probable cause, or warrant." *United States v. Bunty*, 617 F. Supp. 2d 359, 364-65 (E.D. Pa. 2008) (internal quotations omitted) (quoting *Montoya de Hernandez*, 473 U.S. at 538, and finding in the alternative that reasonable suspicion was present); *see also Touset*, 890 F.3d at 1231 (holding that "the Fourth Amendment does not require any suspicion for forensic searches of electronic devices at the border"). Under the test set forth in *Whitted*, the forensic search of Defendant's electronic devices, like a luggage search, involved "neither a high expectation of privacy nor a seriously invasive search," unlike the "significant intrusion" imposed by a body cavity or strip search, or the search of the equivalent of a residence.

*Whitted*, 541 F.3d at 485-86.

A recent case from another Court in this district is illustrative. In *United States v. Maile*, 19-cr-347 (D.N.J. Mar. 19, 2021) (Martinotti, J.), the Court was faced with a similar motion to suppress evidence of child pornography found on the defendant's cellphone during a border search. Like Defendant, Maile was stopped at the airport after returning from an international trip when a border officer observed a TECS notice. *See* slip. op. at 3. Like Defendant, Maile's electronic devices were manually searched at the airport, revealing suspected child pornography. *Id.* at 4. Like Defendant, Maile's electronics were seized and sent to HSI for a forensic search. *Id.* at 5. Like Defendant, Maile moved to suppress. The Court denied the motion, agreeing with the United States that "no level of suspicion was required for the manual search" of Maile's electronics at the airport. *Id.* at 10. The Court declined to rule on the issue of whether the manual search and subsequent forensic search were routine, noting "before the border search, the Government had reasonable suspicion for Mr. Maile's alleged child pornography activities." *Id.* at 21.

In this case, both the initial manual search of the iPhone at Newark Airport and the later forensic search at HSI were routine and required no individualized suspicion. But at the very least, the manual search, which involved opening looking through Defendant's iPhone, was a "routine" border search that required no suspicion. *See, e.g.*, *United States v. Cotterman*, 709 F.3d 952, 967 (9th Cir. 2013) ("manual review of files on an electronic device" requires no individualized suspicion); *United States v. Smasal*, No. CRIM. 15-85 JRT/BRT, 2015 WL 4622246 (D. Minn. June 19, 2015), at *6 ("[C]ourts have consistently held that manual reviews of the contents of an electronic device constitute a routine border search for which no particularized suspicion of wrongdoing is required.") (citing cases).

Therefore, the warrantless searches at issue were fully justified under the border search exception, required no individualized suspicion, and the Motion should be denied.

### C. In the Alternative, Reasonable Suspicion Supported the Search of Defendant's iPhone

As noted above, courts of appeals are divided as to whether a forensic search of an electronic device requires (1) no individualized suspicion, *see Touset*, 890 F.3d at 1233; or (2) reasonable suspicion, *see Kolsuz*, 890 F.3d at 144; *Cano*, 934 F.3d at 1016. But no circuit court has ever read *Riley* to require a warrant supported by probable cause to justify a border search. Even if the Government must show reasonable suspicion to justify its forensic search of Defendant's devices—which it does not—the Government can clearly do so based on the evidence in this case.

As the Third Circuit has explained, "[r]easonable suspicion is not a high standard," but instead "sets a relatively low threshold" for even a non-routine border search. *Whitted*, 541 F.3d at 489. The Supreme Court has stated that "'the level of suspicion the [reasonable suspicion] standard requires is considerably less than proof of wrongdoing by a preponderance of the evidence, and obviously less than is necessary for probable cause.'" *Kansas v. Glover*, 589 U.S. 376, 380 (2020) (quoting *Navarette v. California*, 572 U.S. 393, 397 (2014); and citing *United States v. Sokolow*, 490 U.S. 1, 7 (1989)). "Because it is a 'less demanding' standard," the Court continued, "'reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause.'" *Id.* (quoting *Alabama v. White*, 496 U.S. 325, 330 (1990)). "The reasonable suspicion inquiry 'falls considerably short' of 51% accuracy." *Id.* at 381 (quoting *United States v. Arvizu*, 534 U.S. 266, 274 (2002)). Rather, the

government simply needs "to have a 'particularized and objective basis' to suspect illegal activity" and to "be able to articulate reasons that led to the search." *Whitted*, 541 F.3d at 489 (quoting *Arvizu*, 534 U.S. at 273). The court must "consider the totality of the circumstances," and "although each individual factor alone may be consistent with innocent behavior, it is sufficient if together they serve to eliminate a substantial portion of innocent travelers." *Id.* at 489-90 (internal quotations omitted). In other words, the court may not engage in a "divide-and-conquer analysis," dismissing factors that each, taken in isolation, might be "susceptible to an innocent explanation." *Arvizu*, 534 U.S. at 274. Additionally, agents may rely both on ordinary common sense, *Glover*, 589 U.S. at 380-381, and on their training and experience to "make inferences from and deductions about the cumulative information available to them that might well elude an untrained person," *Whitted*, 541 F.3d at 491 (internal quotations omitted) (quoting *Arvizu*, 534 U.S. at 273).

The inquiry into reasonable suspicion is measured against the collective knowledge of all of the relevant officials. *See, e.g.*, *United States v. Torres*, 534 F.3d 207, 210 (3d Cir. 2008) ("the knowledge of [a] dispatcher [including an officer "functioning as a dispatcher"] is imputed to the officers in the field when determining the reasonableness of [a] *Terry* stop," which requires reasonable suspicion); *see also United States v. Ray*, 704 F. App'x 132, 135 (3d Cir. 2017) (non-precedential) ("Under the collective knowledge doctrine, information known to any one officer is imputed to the other officers in a joint operation."); *Whitted*, 541 F.3d at 490 (customs officers entitled to rely on "unsubstantiated" information entered by other officers into the TECS system to create reasonable suspicion); *United States v. Schoor*, 597 F.2d 1303, 1306 (9th Cir. 1979) (Kennedy, J.) ("Suspicion of customs officials is alone sufficient justification for a border search. The source of that suspicion is irrelevant in sustaining the search." (internal citations omitted)).

Here, much like in *Whitted*, a TECS alert tipped off law enforcement to the presence of contraband. The April 12, 2023 TECS alert stated "subject suspected of purchasing child porn online" and "advise[d] [a] basic electronic media search for child porn."[6] *See* Ex. A. to Def's Mot. Per the CBP officer's report, after a basic electronic media inspection was requested and approved, Defendant was "visibl[y] nervous [and] shaking, and avoiding eye contact during [the] exam." *See* Exhibit 1.

Indeed, *United State v. Robinson*, 23-CR-192 (NRM), 2025 WL 1359352 (E.D.N.Y. May 9, 2025)—the outlier out-of-circuit district court decision Defendant invokes, discussed more fully discussed in part II, *infra*—does not favor suppression here. The *Robinson* court declined to find reasonable suspicion based on a TECS hit from three years prior to the search: "The age of the TECS report itself also cuts strongly against a finding of reasonable suspicion here." 2025 WL 1359352, at *16. But here, the TECS report was dated April 12, 2023—*less than one year* before the January 2024 search at issue.

Further, the seasoned CBP and HSI officers who met with Defendant would have known from their training and experience that "persons who deal in child pornography tend to carry at least some of it with them when they travel." *United States v. Verma*, 2010 WL 1427261, at *4 (S.D. Tex. Apr. 8, 2010) (finding the forensic search of computer and hard drives at the border to be routine, but that even if it were not routine, agents still had reasonable suspicion). They also knew that such persons tend to retain their CSAM and to want not to be without it for any lengthy period of time. Relatedly, as the Ninth Circuit has reasoned in finding reasonable suspicion for a

---

[6] Defendant does not appear to dispute the existence of the TECS alert that gave rise to the border search. Accordingly, no hearing is required as to its legality.

forensic search even when an initial manual examination of the defendant's laptop "turned up nothing incriminating," "[c]ollectors of child pornography can hardly be expected to clearly label such files and leave them in readily visible and accessible sections of a computer's hard drive, particularly when they are traveling through border crossings, where individuals ordinarily anticipate confronting at least a cursory inspection." *Cotterman*, 709 F.3d at 970.

Taken together, these facts, which were known to the United States at the time of the search, give rise to an articulable basis to believe that Defendant was engaged in criminal activity and was attempting to bring contraband, in the form of child pornography, into the United States.[7]

## II. UNDER THE GOOD FAITH EXCEPTION, SUPPRESSION IS UNWARRANTED

Even if the Court were to find that the searches of Defendant's electronic devices exceeded the officers' constitutional authority in some manner, the Court should still deny the Motion. The exclusionary rule is a "judicially created doctrine" intended "[t]o deter Fourth Amendment violations." *United States v. Katzin*, 769 F.3d 163, 169 (3d Cir. 2014) (en banc). "However, even when the Government violates the Fourth Amendment, ill-gotten evidence will not be suppressed when the good faith exception to the exclusionary rule applies." *Id.* at 169-70. After

[7] Even if the Court were to find that all of these factors did not combine to create reasonable suspicion at the time of the manual search at Newark Airport, such suspicion certainly arose when the agents found CSAM on Defendant's iPhone. Evidence obtained through a suspicionless routine border search can give rise to reasonable suspicion needed to conduct a non-routine border search. *See, e.g.*, *Whitted*, 541 F.3d at 486 & n.4. And it is axiomatic that discovery of CSAM or other contraband in an individual's possession gives rise to at least reasonable suspicion (if not, indeed, probable cause) that the individual is carrying additional contraband. *See, e.g.*, *United States v. Ramirez*, 2019 WL 3502913, at *15 (W.D. Tex. Aug. 1, 2019) (declining to reach question of whether search of defendant's phone was routine or non-routine, since reasonable suspicion was present based on having found suspected CSAM during an initial consent search, along with TECS record stating that the defendant was linked to the purchase of child pornography).

all, "there is no constitutional right to have the evidentiary fruits of an illegal search or seizure suppressed at trial." *Id.* at 170. Evidence should be excluded only in those "'unusual cases'" where doing so would *both* "appreciably deter governmental violations of the Fourth Amendment" *and* "outweigh the 'substantial social costs' of exclusion," including "omitting 'reliable, trustworthy evidence' of a defendant's guilt, thereby 'suppressing the truth and setting a criminal loose in the community without punishment." *Id.* at 170, 171 (internal alterations omitted; quoting *United States v. Leon*, 468 U.S. 897, 907 (1984); and *Davis v. United States*, 131 S. Ct. 2419, 2427 (2011)). "Accordingly," the Third Circuit has held, "to warrant exclusion, the deterrent value of suppression must overcome the resulting social costs." *Id.* at 171 (citing *Davis*, 131 S. Ct. at 2427). "Put differently, exclusion is appropriate only where law enforcement conduct is both 'sufficiently deliberate' that deterrence is effective and 'sufficiently culpable' that deterrence outweighs the costs of suppression." *Id.*

The good faith exception applies unless "'a reasonably well trained officer would have known that the search was illegal in light of all the circumstances.'" *Id.* (citing cases). A reasonable belief that the search was legal can stem either from then-binding appellate precedent, or from a "more general good faith test." *Id.* at 173.

Here, both paths to the good faith exception under *Katzin* are satisfied. First, the binding precedent of *Montoya de Hernandez*, *Flores-Montano*, and *Whitted* authorized the officers to conduct a warrantless border search of Defendant's electronic devices. *See Katzin*, 769 F.3d at 176 (court must conduct "holistic examination of whether a reasonable officer would believe in good faith that binding appellate precedent authorized certain conduct," not "mechanically compar[e] the facts of cases and tally[] their similarities and differences"). Thus, law enforcement

acted in good faith in relying on well-established precedent in carrying out the instant border search in a manner consistent with that precedent. *See id*.

Second, even if the Court were to find that the past precedent was not sufficiently on point to be "binding appellate precedent" authorizing the search, the Court should still fulfill its "duty to consider the totality of the circumstances to answer the 'objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal.'" *Id.* at 177 (quoting *Leon*, 468 U.S. at 906-07). The Third Circuit has explained that, to conduct this analysis, the court must consider the "legal landscape" at the time of the search. *Id.* at 179-84. Here, as noted above, the case law was clear in January 2024: no court in the Third Circuit required probable cause or a warrant for the searches the agents performed here. *See, e.g.*, *Kolsuz*, 890 F.3d at 142 (rejecting argument that *Riley* required warrant based on probable cause for border search of cellphone); *Touset*, 890 F.3d at 1233 (holding that even a forensic search of an electronic device at the border requires no individualized suspicion); *cf. United States v. Molina-Isidoro*, 884 F.3d 287, 292 (5th Cir. 2018) (observing that "it is telling that no post-*Riley* decision issued either before or after this search has required a warrant for a border search of an electronic device").

Despite the great weight of precedent—including binding precedent—Defendant appears to tether his suppression argument to *Robinson*, which is currently on appeal in the Second Circuit. *See* 2025 WL 1359352, appeal pending, No. 25-1428 (2d Cir.). *Robinson* is an outlier among outliers; it appears to be the *only* court to suppress evidence of child pornography derived from a border search of a cellphone. Even the other courts within the Second Circuit that have very recently held that the search of a cellphone at the border must be supported by a warrant and probable cause—which makes them outliers as well—have nonetheless refused to suppress the

evidence under the good faith exception. *See United States v. Sultanov*, 742 F. Supp. 3d 258, 299 (E.D.N.Y. 2024); *United States v. Smith*, 673 F. Supp. 3d 381, 402-03 (S.D.N.Y. 2023), appeal pending, No. 24-1680 (2d Cir.).[8] But *Robinson*, an out-of-circuit district court case, was decided on May 9, 2025—*after* the January 22, 2024 border search of Defendant's iPhone. Thus, it bears no impact on whether, as of the date of the search, "a reasonably well trained officer would have known that the search was illegal." *Katzin*, 769 F.3d at 177. Furthermore, it isn't even persuasive within its own district. *See United States v. Walden*, 24-cr-521 (GRB), 2025 WL 3154359 (E.D.N.Y. Nov. 12, 2025) (denying defendant's motion to suppress and holding that reasonable suspicion justified the manual and forensic searches of defendant's cellphone obtained at the border, and that the Government acted in good faith), appeal pending, No. 25-2893 (2d Cir.). When assessing good faith in this context, the Government submits that the agents in this case were correct to rely on binding Third Circuit precedent authorizing similar border searches of electronic devices—including video camcorders—notwithstanding a few contrary, non-binding, out-of-district decisions holding which may ultimately be overturned on appeal.

Here, the Court should find that, if the searches ran afoul of the Constitution in any way, their fruits should nonetheless not be suppressed. The deterrent value of suppressing the fruits of such a search would be little to none. On the other side of the ledger, the harm to society and to the pursuit of truth in suppressing voluminous evidence of a years-long campaign to witness the

---

[8] Even these courts expressly acknowledged that they departed from the holdings of *every* appellate court to have considered the issue of cellphone searches at the border. *See Smith*, 673 F. Supp. 3d at 396 (recognizing that "of the five federal courts of appeals to consider the question, none has quite gone this far"); *Sultanov*, 742 F. Supp. 3d at 291 (acknowledging that circuit courts and most district courts within the Second Circuit "did not go this far" as to require a warrant).

victimization of children by possessing and transporting CSAM would be grave indeed.[9] The fruits of the border search should not be suppressed.

## III. DEFENDANT'S MIRANDIZED STATEMENT SHOULD NOT BE SUPPRESSED

This Court should also deny Defendant's motion to suppress the *Mirandized* statement that he made on the evening of January 22, 2024 in the airport. He claims the airport interview was "derived from" the search of his electronic devices, Def's Mot. at 2, despite his express acknowledgement of a traveler's "diminished expectation of privacy when attempting to enter the United States" and the "*common experience* of being stopped and questioned at the border." *Id.* at 4 (emphasis added). But "A person seeking entry into the United States does *not* have a right to remain silent." *United States v Kiam*, 432 F.3d 524, 529 (3d Cir. 2006) (internal quotation marks and citation omitted) (emphasis in original).

In order to suppress Defendant's statements, they must be derived from (i.e., the "but-for" cause) of an illegal border search. *See United States v. Marasco*, 487 F.3d 541, 547 (8th Cir. 2007). Here, not only was the border search perfectly legal, *see supra*, but Defendant was properly *Mirandized*, agreed to speak with law enforcement, and did not invoke his right to counsel. Indeed, Defendant acknowledged and signed a *written Miranda* form. His interview with law enforcement largely concerned the purported reason for his trip to Thailand, which he claimed was to file a police report because his purported girlfriend, "Yui," stole his money. He

---

[9] Defendant is not merely a garden variety CSAM collector. As described elsewhere, he paid for CSAM videos that were specifically created in response to his requests. In other words, Defendant did not merely traffic in years-old videos, but caused the sexual abuse of a child in real time in response to his requests.

was never directly confronted with the images and texts found on this phone; rather, he volunteered this information. He cannot claim to have been unaware of his rights, especially because he later invoked his right to stop questioning, at which point the interview stopped. The Defendant was appropriately questioned at the border and then, even after *Miranda* warnings were administered, made inculpatory statements. Suppression is therefore inappropriate.

## **CONCLUSION**

Accordingly, the Court should deny Defendant's motion to suppress the fruits of the border search, including his *Mirandized* statement to agents before his arrest and evidence subsequently obtained from search warrants.[10] Because there are no disputed issues of material fact, an evidentiary hearing is not necessary.

Respectfully submitted,

TODD BLANCHE
U.S. Deputy Attorney General

PHILIP LAMPARELLO
Senior Counsel

Dated: February 25, 2026
Newark, New Jersey

*/s/ Robert L. Toll*
By: Robert L. Toll
Matthew Specht
Assistant U.S. Attorneys

[10] Defendant claims that the Government was "unnecessarily delayed" in seeking process for, among other things, Defendant's iCloud account, and that failure to include reference to the TECS lookout in the search warrant affidavits somehow amounts to a "reckless disregard for the truth." Def's Mot. at 9. Defendant fails to explain what constitutes "unnecessary delay." Regardless, the Government is hard pressed to believe that seeking a search warrant less than four months after the forensic extraction of Defendant's iPhone—which uncovered approximately 170 photos and 8 videos containing child pornography, *see* Ex. D to Def's Mot. at ¶ 10—would somehow justify suppression.

**CERTIFICATE OF SERVICE**

The undersigned certifies that, on this day I caused to be served, via the Court's Electronic Filing System ("ECF"), a copy of the Memorandum of Law of the United States in Opposition to Defendant's Motion to Suppress.

Respectfully submitted,

TODD BLANCHE
U.S. Deputy Attorney General

PHILIP LAMPARELLO
Senior Counsel

Dated: February 25, 2026
Newark, New Jersey

*/s/ Robert L. Toll*
By: Robert L. Toll
Matthew Specht
Assistant U.S. Attorneys