Jayson Setera
#25703114
ECCF 2B1

254 Doremus Ave

Newark, NJ 07105

February 28, 2026

RE: U.S. v. Jayson Setera

CRIM. #25-802

Hon. Jamel K. Senper

U.S. District Court
50 WALNUT ST.
Newark, NJ 07114

Dear Hon. Senper,

I'm writing to your chambers in reference to case #25-802. The specific problem I have is that I wish to file a motion to dismiss due to Improper venue. I did the best I could to write a motion pro se.( It is on the next pages.) The problem is I was arrested in Oregon, the place of my residence about a year later after being detained at the Newark Airport here in NJ. In accordance to 18 U.S.C. 3238 the offense not committed in any district is an issue of concern. My Attorney Tyler Newman will not file this motion on my behalf. stating that it is "frivolous". I would like to file the motion so at least the argument is preserved if going into appeal. Thank you for your attention on this matter, it is deeply appreciated.

Sincerely, Jayson Setera

US DISTRICT COURT
50 WALNUT ST.
NEWARK, NJ 07105

| | | |
|---|---|---|
| UNITED STATES<br>V.<br>JAYSON SECERA | : | MOTION TO DISMISS COUNT DUE TO VENUE<br><br>CRIM# 25-802 |

PLEASE TAKE NOTICE THE DEFENDANT (PRO SE) WILL MOVE BEFORE THE COURT FOR A MOTION TO DISMISS COUNT 2 - TRANSPORT OF CHILD PORNOGRAPHY TITLE 18 US CODE SECS. 22 A(a)(1)&2 BASED ON IMPROPER VENUE.

18 U.S.C. 3238 OFFENSES NOT COMMITTED IN ANY DISTRICT. THE TRIAL OF AN OFFENDER BEGUN OR COMMITTED UPON THE HIGH SEAS OR ELSEWHERE OUT OF DISTRICT SHALL BE IN THE DISTRICT IN WHICH THE OFFENDER IS ARRESTED OR 1ST BROUGHT... DEFENDANT WAS DETAINED AT NEWARK AIRPORT JAN 22 2024 AT NEWARK NJ AIRPORT. THEN OVER 1 YEAR LATER IN FEB 2025 ARRESTED ON A CRIMINAL COMPLAINT IN OREGON (HIS PLACE OF RESIDENCE). PLEASE SEE SUPPORTING DOCS.

# DISMISS COUNT DUE TO IMPROPER VENUE

Although the title of 3238 includes only "offenses not committed in any district," it is a "well-settled rule of statutory interpretation that titles and section headings cannot limit the plain meaning of statutory text where that text is clear." {2011 U.S. App. LEXIS 13}*M.A. ex rel. E.S. v. State-Operated Sch. Dist.*, 344 F.3d 335, 348 (3d Cir. 2003). Here, the plain language of 3238 supports the Fourth and Fifth Circuits' interpretation of the statute. Section 3238 applies, by its terms, to any offense "begun or committed" outside the United States. Pendleton would have us read the term "committed" to mean "wholly committed." But this cannot be correct, because crimes that are "wholly committed" outside the United States are, by definition, "begun" abroad. For the term "committed" to have independent meaning, it must refer to crimes that begin *inside* the United States but that are in their essence committed abroad. *See Rosenberg v. XM Ventures*, 274 F.3d 137, 141 (3d Cir. 2001) ("[W]hen interpreting a statute, courts should endeavor to give meaning to every word which Congress used and therefore should avoid an interpretation which renders an element of the language superfluous.").

The meaning of the word "shall" is not ambiguous. It is a "word of command," *Black's Law Dictionary* (5th ed. 1979), that "normally creates an obligation impervious to judicial discretion," *Lexecon Inc. v. Milberg Weiss Bershad Hynes*

*& Lerach*, 523 U.S. 26, 35, 118 S. Ct. 956, 140 L. Ed. 2d 62 (1998). We have held that "shall" in a statute is interpreted as "must," which means "shall" signals when a court must follow a statute's directive regardless of whether it agrees with the result. *Scott v. Vantage Corp.*, 64 F.4th 462, 477 (3d Cir. 2023). To interpret "shall" as anything but an obligatory command to appoint an examiner, when the conditions of subsection 1104(c)(2) have been met, would require us "to abandon plain meanings altogether." *Litgo N.J. Inc. v. Comm'r N.J. Dep't of Env't Prot.*, 725 F.3d 369, 397 n.17 (3d Cir. 2013) (citations omitted). Instead, the language of subsection 1104(c)(2) requires us to command the Bankruptcy Court to grant the U.S. Trustee's request for an examiner in this instance. *See Me. Cmty. Health Options v. United States*, 590 U.S. 296, 140 S. Ct. 1308, 1320, 206 L. Ed. 2d 764 (2020) ("The first sign that the statute imposed an obligation is its mandatory language: 'shall.'").

**18 U.S.C. § 3238. Offenses not committed in any district**

**The trial of all offenses begun or committed upon the high seas, or elsewhere out of the jurisdiction of any particular State or district, shall be in the district in which the offender**, or any one of two or more joint offenders, **is arrested** or is first brought; but if such offender or offenders are not so arrested or brought into any district, an indictment or information may be filed in the district of the last known residence of the offender or of any one of two or more joint offenders, or if no such residence is known the indictment or information may be filed in the District of Columbia.

**HISTORY:**

June 25, 1948, ch 645, 1, 62 Stat. 826; May 23, 1963, P. L. 88-27, 77 Stat. 48.

**Section 2252A(a)(1) does not define the term "transport" and the Sixth Circuit has not yet addressed the definition of the term "transport" within this statute. In interpreting statutory text, the Court must look to the "ordinary, contemporary, common meaning" of the word. *Southwest Airlines Co. v. Saxon*, 596 U.S. 450, 455, 142 S. Ct. 1783, 213 L. Ed. 2d 27 (2022) (internal quotation marks omitted). Section 2252A was enacted as part the CPA 1996. Pub. L. No. 104-208, 121, 110 Stat. 3009 (1996).**

**In 1996, Black's Law Dictionary defined the term "transport" as "[t]o carry or convey from one place to another." *Transport*, Black's Law Dictionary (6th ed. 1990). The Oxford English Dictionary defines "transport" as "[t]he action of carrying or conveying a thing or person from one place to another" and indicates that this definition of the term dates back to 1611. *Transport*, OXFORD ENGLISH DICTIONARY, https://www.oed.com/dictionary/transport_n?tab=meaning_and_use#17666554 (last visited Apr. 15, 2025). Additionally, other federal courts, in identifying the "ordinary meaning" of the term "transport" in this statute,8 have found that it means to move something from one person or place to another. *United States v.***

*Siepman*, 107 F.4th 762, 765-66 (7th Cir. 2024); *United States v. Wasson*, 847 F. App'x 523, 525 (10th Cir. 2021) (internal quotation marks omitted); *United States v. Rohani*, No. 3:22-cr-238, 2025 U.S. Dist. LEXIS 17619, 2025 WL 356393, at *3 (D. Or. Jan. 31, 2025); *see also United States v. Carver*, No. 22-CR-316, 2024 U.S. Dist. LEXIS 1256, 2024 WL 36988, at *7 (E.D.N.Y. Jan. 3, 2024) (addressing similar definitions of "transport"). The Court agrees and finds that the meaning of "transport" within 2252A(a)(1) means to move the illicit materials to another person or another place.

The trial of all offenses *begun* or committed upon the high seas, or elsewhere out of the jurisdiction of any particular State or district, shall be in the district in which the offender, or any one of two or more joint offenders, is arrested or is first brought; but if such offender or offenders are not so arrested or brought into any district, an indictment or information may be filed in the district of the last known

The Government has charged Defendant with transportation. Unlike the possession offense, the transportation offense, mandates that the content was actually transported in foreign commerce (in the context of the instant case). The Government's theory of transportation, is that Defendant took the contraband content on a commercial flight from Japan to the United States.

By virtue of the allegation, Defendant would need to have transported the content on his flight from Japan to the District of New Jersey.

This means the offense would have "begun" outside of the United States. The possession count does not require this.

Defendant was not arrested in the District of New Jersey. Defendant was arrested in the District of Oregon, on a criminal complaint, nearly one year later. The transportation charge was the charge on the criminal complaint (not that it would even necessarily need to be - United States v. Ghanem, 993 F.3d 1113 (9th Cir. 2021)) (see 3. "In Connection With").

Had Defendant been arrested at the airport, this clause would have been met. It was not. Therefore under the mandatory venue provision of Section 3238, the District of Oregon is the sole district under which Defendant may be prosecuted for the "transportation" offense, as alleged. The Government waited one year to arrest Defendant on a criminal complaint.

(A) US v Rivera Niebla (D.DC)

The government bears the burden of proving by a preponderance of the evidence that venue is proper with respect to each count charged against a defendant. United States v. Kwong-Wah, 924 F.2d 298, 301, 288 U.S. App. D.C. 54 (D.C. Cir. 1991). Venue may be proper in more than one district. Id. In the indictment here, the government alleged that venue was proper for the conspiracy count pursuant to 18 U.S.C. 3238 (the section under which Rivera-Niebla was charged, 18 U.S.C. 963, does not have its own venue provision). Section 3238 provides that:

The companion statute to section 3238, section 3237, applies when an offense is begun and completed in the United States; it says nothing about what happens when an offense is begun outside the country and completed in the United States-presumably, because section 3238 addresses that scenario. See 3237(a).

Several circuits have addressed whether, for section 3238 to apply, the entire offense must be committed extraterritorially, but the D.C. Circuit is not one of them. The Second Circuit has held that section 3238 applies only to offenses "not committed in any district," that is committed completely extraterritorially. United States v. Gilboe, 684 F.2d 235, 239 (2d Cir. 1982). But as the Third Circuit recently pointed out in United States v. Pendleton, 658 F.3d 299 (3d Cir. 2011), that holding is difficult to square with the text of the statute. Id. at 304-05. By its own terms, section 3238 applies to any offense "begun or committed" extraterritorially; by holding that it applies only to offenses committed entirely outside the country, the Second Circuit read the word "begun" out of the statute. Pendleton, 658 F.3d at 305. As the Ninth Circuit explained in United States v. Pace, 314 F.3d 344, 351 (9th Cir. 2002),2 if an offense began outside of the country, section 3238 will apply; whether an offense began or was committed outside the country are two separate inquiries.

# MODEL JURY INSTRUCTION

[4] Third ElementEffect on Interstate Commerce

Instruction 62-8 Third Element

Visual Depiction Actually Moved in Interstate Commerce

The third element that the government must prove beyond a reasonable doubt is that the visual depiction was mailed or actually transported in interstate or foreign commerce (*for conduct after Oct. 13, 2008, substitute:* mailed or actually transported or transmitted in or affecting interstate or foreign commerce).

*If mailing is alleged:* The indictment alleges that the visual depiction was mailed. This means that the government must prove that the visual depiction was deposited in the mail for delivery by the United States Postal Service.

*If transport or transmission in interstate or foreign commerce is alleged:* The indictment alleges that the visual depiction was actually transported in interstate

When actual transport in interstate commerce is charged, there may be some controversy concerning whether interstate transport of the depictions by the defendant personally, for example, between the place where the photograph was taken and the defendants home in another state, is sufficient to satisfy this element. The Second and Seventh Circuits have clearly held that personal transportation by the defendant across state lines is sufficient to satisfy this element without any further showing. 7 However, in a civil damages case, the Third Circuit held on similar facts that defendants transport of the photos between homes in two states was not transportation in interstate commerce. 8

Prior to the 2008 amendments to section 2251, there was a division in the circuits concerning the transmission of photographs by means of the Internet. The majority view was that the use of the Internet is sufficient by itself without proof that the transmission of the image actually crossed a state line. 9 Under this view, all that is required is proof that the particular depiction was transmitted through the Internet. 10 On the other hand, in *United States v. Schaefer*, 11 the Tenth Circuit held that the government must prove transmission of the particular image across a state line. 12 The Ninth Circuit has recently agreed with this conclusion in a case involving transportation, 13 although it has held that in a case involving receiving or possession that proof that the image was obtained from the Internet is sufficient without proof that the actual image crossed a state line. 14 The 2008 amendments resolved this division by expanding the language of the statute from transported in interstate or foreign commerce to read transported or transmitted in or affecting interstate commerce. 15 The legislative history makes unmistakably clear that the purpose of these amendments was to adopt the majority position and overrule *Schaefer*. 16

Although there has not been a great deal of discussion in the cases, it appears that there is no scienter aspect to this element. The Conference Report to the enacting legislation states that:

[t]he House Amendment prohibits the transportation of visual or printed matter actually transported in interstate or foreign commerce or mailed whether or not the accused knew or had reason to know of such transporting or mailing. The Senate bill does not. The conference substitute accepts the House provision. 17

As a result, the only court to consider this question held that such knowledge is not required. 18

Footnotes

1
United States v. Lewis, 554 F.3d 208, 21214 (1st Cir. 2008).

2
*See* United States v. Griffith, 284 F.3d 338, 34748 (2d Cir. 2002); United States v. Schaffner, 258 F.3d 675, 683 (7th Cir. 2001).

3
Effective Child Pornography Prosecution Act of 2008, Pub. L. No. 110-358, tit. I, 103(b), 122 Stat. 4002 (2008).

4
18 U.S.C. 10; United States v. Polanco, 451 F.3d 308, 31011 (3d Cir. 2006).

5
United States v. Goodwin, 674 F. Supp. 1211, 1216 (E.D. Va. 1987); *see also* United States v. Elliott, 89 F.3d 1360, 136364 (8th Cir. 1996) (reaching same conclusion in mail fraud case).

6
United States v. Acosta, 421 F.3d 1195, 1198 (11th Cir. 2005); United States v. Moore, 916 F.2d 1131, 1138 (6th Cir. 1990); United States v. Dornhofer, 859 F.2d 1195, 119798 (4th Cir. 1988).

7
United States v. Griffith, 284 F.3d 338, 34748 (2d Cir. 2002) (videotape kept in defendants car went from New York to New Jersey and back); United States v. Schaffner, 258 F.3d 675, 683 (7th Cir. 2001) (photograph

taken at hotel in one state later found in defendants home computer).

8

Doe v. Chamberlin, 299 F.3d 192, 195 (3d Cir. 2002) (photo transported between defendants homes in different states).

9

United States v. Lewis, 554 F.3d 208, 21416 (1st Cir. 2008) (section 2252 case); United States v. MacEwan, 445 F.3d 237, 244 (3d Cir. 2006) (section 2252A case); United States v. Runyan, 290 F.3d 223, 239 (5th Cir. 2002) (section 2252A case); United States v. Carroll, 105 F.3d 740, 742 (1st Cir. 1997) (section 2251(a) case); United States v. Pomerico, 2008 U.S. Dist. LEXIS 77783 (E.D.N.Y. Oct. 2, 2008) (section 2252 case); *see also* United States v. Hersh, 297 F.3d 1233, 1254 n.31 (11th Cir. 2002) (quoting Carroll, *above*, with apparent approval, but not specifically holding that intrastate transmission would be sufficient); United States v. Gouin, 2008 U.S. Dist. LEXIS 33709 (W.D. Wash. Apr. 24, 2008), *affd*, 2009 U.S. App. LEXIS 8507 (9th Cir. April 22, 2009 (indicating agreement with *MacEwan*, *above*, but holding that evidence was sufficient to prove Internet images actually crossed state lines).

10

United States v. Hersh, 297 F.3d 1233, 1254 n.31 (11th Cir. 2002); United States v. Runyan, 290 F.3d 223, 239 (5th Cir. 2002).

For a discussion of the kinds of proof that will satisfy this requirement, see *United States v. Henriques*, 234 F.3d 263, 267 (5th Cir. 2000) (embedded web address found in image).

11

501 F.3d 1197 (10th Cir. 2007).

12

*Schaefer*, 501 F.3d at 120005. Note that in United States v. Kimler, 335 F.3d 1132, 113940 (10th Cir. 2003), the court appeared to reach a contrary result. The *Schaefer* court stated that *Kimler* did not support the majority position because the defendant in that case did not contest this issue, and because the evidence was clear in that case that the images did in fact cross state lines. *Schaefer*, 501 F.3d at 1203.

13

United States v. Wright, 625 F.3d 583, 591601 (9th Cir. 2010).

14

United States v. Lynn, 636 F.3d 1127, 113336 (9th Cir.), *cert. denied*, 565 U.S. 869 (2011). In this case, there was proof that the images were produced in another state, and proof that defendant had downloaded them from the Internet, but no proof that he had downloaded them from a source outside the state where he downloaded them. The Ninth Circuit held that the proof was sufficient. *Id.*

15

*See* Protect Our Children Act of 2008, Pub. L. No. 110-401, tit. III, 301(1)(D), 122 Stat. 4242 (2008) (adding or transmitted); Effective Child Pornography Prosecution Act of 2008, Pub. L. No. 110-358, tit. I, 103(b), 122 Stat. 4002 (2008) (adding or affecting).

16

*See* S. Rep. No. 110-332 (2008); 154 Cong. Rec. H9888-89 (Sept. 25, 2008) (separate remarks of Reps. Lofgren, Cannon, and Boyda); 153 Cong. Rec. H13591-92 (Nov. 13, 2007) (separate remarks of Reps. Conyers, Goodlatte, Boyda, and Biggert).

17

H.R. Rep. No. 95-811, at 5 (1977) (Conf. Rep.), *reprinted at* 1978 U.S. Code. Cong. & Admin. News 69.

18

United States v. Jang, 2007 U.S. Dist. LEXIS 95347 (S.D. Ind. Dec. 27, 2007).